[799 NYS2d 795]

Rudgayzer & Gratt, Appellant, v Cape Canaveral Tour and
Travel, Inc., Defendant, and Kosmas Group Interna-
tional, Inc., et al., Respondents.

Second Department, August 8, 2005

## APPEARANCES OF COUNSEL

*Todd C. Bank*, Kew Gardens, for appellant.

*Boundas Skarzynski Walsh & Black, LLC*, New York City (*William M. Billings* and *Weinstock & Scavo, P.C.*, of counsel), for Kosmas Group International, Inc., and others, respondents.

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, New York City (*Eugene T. Boulé* of counsel), for King's Creek Plantation, LLC., respondent.

## OPINION OF THE COURT

RITTER, J.

The issue presented is whether this class action may be maintained for alleged violations of the federal Telephone Consumer Protection Act of 1991 (47 USC § 227) in light of CPLR 901 (b). We hold that it may not.

The Telephone Consumer Protection Act of 1991 (hereinafter the TCPA) was enacted by the United States Congress in 1991 to address telemarketing abuses by use of telephones and facsimile machines (*see* S Rep No. 102-178, 102d Cong, 1st Sess, at 1, reprinted in 1991 US Code Cong & Admin News, at 1968; *Schulman v Chase Manhattan Bank*, 268 AD2d 174 [2000]). Although many states had already adopted legislation restricting unsolicited telemarketing before the federal legislation, including the State of New York (*see* General Business Law § 399-p), such measures had limited effect because states do not have jurisdiction over interstate calls (*see Schulman v Chase Manhattan Bank*, 268 AD2d 174, 175 [2000]). In relevant part, the TCPA makes it unlawful for any person to send an unsolicited advertisement to a telephone facsimile machine belonging to a recipient within the United States (*see* 47 USC § 227 [b] [1] [C]). The TCPA authorizes state attorneys general to bring an action in federal court for damages, penalties, and injunctive relief whenever there is reason to believe that a person has

engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of a state in violation of the act (*see* 47 USC § 227 [f] [1], [2]). The TCPA provides for a private right of action as follows:

"A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

"(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

"(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such offense, whichever is greater, or

"(C) both such actions.

"If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." (47 USC § 227 [b] [3].)

This provision has been construed to grant state courts exclusive jurisdiction over private rights of action (*see Schulman v Chase Manhattan Bank, supra* at 178; *see also Foxhall Realty Law Offs., Inc. v Telecommunications Premium Servs., Ltd.*, 156 F3d 432, 437 [1998]). This conclusion was based, in part, on statements by the author of the law, Senator Hollings, that the purpose of the provision providing for a private right of action was to:

"make it easier for consumers to recover damages from receiving these computerized calls [and to] allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court." (137 Cong Rec S16204-01, S16205 [Nov. 7, 1991] [statement of Senator

Hollings]; *see Schulman v Chase Manhattan Bank, supra* at 178-179; *Foxhall Realty Law Offs., Inc. v Telecommunications Premium Servs., Ltd., supra* at 437-438.)

However, the exercise of such jurisdiction by a state is not mandatory. Rather, the Second Circuit has held that a state court may decline to exercise the jurisdiction granted under the TCPA without violating federal due process or equal protection concerns, despite the disparity this might create among states as to a private remedy under the statute (*see Foxhall Realty Law Offs., Inc. v Telecommunications Premium Servs., Ltd., supra* at 437-438). Adopting the reasoning of *International Science & Tech. Inst., Inc. v Inacom Communications, Inc.* (106 F3d 1146 [1997]), the Second Circuit held:

"To the extent that a state decides to prevent its courts from hearing private actions to enforce the TCPA's substantive rights, the existence of a private right of action under the TCPA could vary from state to state. As the Fourth Circuit explained, however:

'That inequality . . . touches only a statutory permission to enforce privately the same substantive rights which both the state and the federal government can enforce in federal court through other mechanisms. Moreover, because the inequality arises from a classification that is not based on a fundamental right or impermissible characteristic such as race, religion, or national origin, our review of the statutory provision under the Equal Protection Clause is narrow.' . . .

"Foxhall argues that the Fourth Circuit's reliance on 'other mechanisms,' namely enforcement by state attorneys general, does not alleviate the inequality problem because state attorneys general have discretion as to whether or not to bring a suit. However, this criticism does not prevent the legislative classification from being 'rationally related' to its legitimate purpose—authorizing private actions to stop unsolicited faxing while mindful of not overburdening state and federal courts and respecting states' judgments about when their courts are overburdened. Further, we reject Foxhall's claim that a higher degree of scrutiny than rational basis review

is warranted because, in Foxhall's words, we are dealing with 'the fundamental right of equal access to the courts and to federal protections.' This argument places the cart before the horse. The TCPA does not provide a 'federal protection' but a permissive authorization to bring actions in state courts, and the 'unequal' access is to a right that does not trigger strict scrutiny under our constitutional tests." (*Foxhall Realty Law Offs., Inc. v Telecommunications Premium Servs., Ltd., supra* at 438.)

Here, the plaintiff seeks to commence a class action to recover damages for unsolicited faxes allegedly sent by the defendants. The plaintiff seeks to recover for each member of the class the minimum measure of recovery created by the TCPA for a violation ($500), to be trebled upon a finding that the violation was made willfully or knowingly. However, CPLR 901 (b) provides: "Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." Here, although the TCPA creates a minimum measure of recovery and imposes a penalty for willful or knowing violations, and the plaintiff is seeking the same, the TCPA does not specifically authorize a class action. Thus, the motions to dismiss the complaint were properly granted.

The plaintiff asserts that CPLR 901 (b) is not applicable by its terms because, under federal case law, a class action is permitted unless otherwise expressly prohibited (citing *Califano v Yamasaki*, 442 US 682 [1979]). Thus, the plaintiff argues, the TCPA, by its silence on the issue of class actions, in effect, specifically authorizes the same. However, the courts of this state have not interpreted silence on the issue of class actions in state or federal statutes to be, by implication, "specific[ ] authoriz[ation]" to commence a class action within the meaning of CPLR 901 (b) (*see e.g. Klapak v Pappas*, 79 AD2d 602 [1980] [dismissing class action brought pursuant to Social Services Law § 131-*o*]; *Carter v Frito-Lay, Inc.*, 74 AD2d 550 [1980] [dismissing class action brought pursuant to Labor Law § 198]; *Burns v Volkswagen of Am.*, 118 Misc 2d 289 [1982], *affd* 97 AD2d 977 [1983] [dismissing class action brought pursuant to General Business Law § 349 (h); § 350-d (3)]; *Vickers v Home Fed. Sav. & Loan Assn. of E. Rochester*, 56 AD2d 62, 64 [1977]

[class action permitted under federal Truth in Lending Act because class action authorized by language of statute and federal courts considering statute found that it "expressly contemplate(d)" class actions]). Moreover, the plaintiff's proffered interpretation of CPLR 901 (b) would render the phrase "specific[ ] authoriz[ation]" meaningless, in violation of fundamental rules of statutory construction (*see* McKinney's Cons Laws of NY, Statutes §§ 230, 231).

Further, the plaintiff argues, even if CPLR 901 (b) is applicable by its terms, principles announced under the so-called reverse-*Erie* doctrine would preclude its application here. The plaintiff notes that, in general, a state court hearing a federally-created claim is to apply federal "substantive" law and state "procedural" law. Here, the plaintiff argues, CPLR 901 (b) is substantive in nature and, therefore, should not be applied. However, principles articulated under the reverse-*Erie* doctrine would not preclude the application of CPLR 901 (b) in this action.

In *Felder v Casey* (487 US 131 [1988]), the Supreme Court addressed the applicability of a Wisconsin notice of claim requirement to a federal civil rights action brought in state court pursuant to 42 USC § 1983. The Wisconsin state law required a party seeking to bring an action against a state or local governmental entity or officer to file a notice of the claim within 120 days of when the claim accrued, and prohibited an action from being filed for 120 days thereafter to permit the defendant an opportunity to consider the demanded relief. There was no similar requirement in federal law. The Wisconsin Supreme Court held that the state law was to be applied, "reason[ing] that while Congress may establish the procedural framework under which claims are heard in federal court, States retain the authority under the Constitution to prescribe the rules and procedures that govern actions in their own tribunals. Accordingly, a party who chooses to vindicate a congressionally created right in state court must abide by the State's procedures" (*id.* at 137). In reversing the Wisconsin court, the *Casey* court held:

> "No one disputes the general and unassailable proposition relied upon by the Wisconsin Supreme Court below that States may establish the rules of procedure governing litigation in their own courts.
>
> "By the same token, however, where state courts entertain a federally created cause of action, the

'federal right cannot be defeated by the forms of local practice.' *Brown v. Western R. Co. of Alabama*, 338 U.S. 294, 296 (1949). The question before us today, therefore, is essentially one of pre-emption: is the application of the State's notice-of-claim provision to § 1983 actions brought in state courts consistent with the goals of the federal civil rights laws, or does the enforcement of such a requirement instead ' "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" '? *Perez v. Campbell*, 402 U.S. 637, 649 (1971) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 [1941]). Under the Supremacy Clause of the Federal Constitution, '[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law,' for 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.' *Free v. Bland*, 369 U.S. 663, 666 (1962). Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in a state court." (*Id.* at 138.)

The *Casey* court rejected the argument made by the state respondent and certain amici curiae that "[t]he general rule, bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them," and "[l]itigants who choose to bring their civil rights actions in state courts presumably do so in order to obtain the benefit of certain procedural advantages in those courts, or to draw their juries from urban populations" and, therefore, must "comply as well with those state rules they find less to their liking" (*id.* at 150). The *Casey* court held:

"However equitable this bitter-with-the-sweet argument may appear in the abstract, it has no place under our Supremacy Clause analysis. Federal law takes state courts as it finds them only insofar as those courts employ rules that do not 'impose unnecessary burdens upon rights of recovery autho-

rized by federal law.' *Brown v. Western R. Co. of Alabama*, 338 U.S., at 298-299. States may make the litigation of federal rights as congenial as they see fit—not as a *quid pro quo* for compliance with other, uncongenial rules, but because such congeniality does not stand as an obstacle to the accomplishment of Congress' goals." (*Id.* at 150-151 [citation omitted]; *see also Gasperini v Center for Humanities, Inc.*, 518 US 415, 428 [1996]; *Guaranty Trust Co. v York*, 326 US 99 [1945].)

Here, the purpose and objectives of Congress as to private rights of action under the TCPA, as drawn from the plain language and legislative history of the TCPA, and consistent with the case law, was not to create a federal private right of action that could not be defeated by the forms of local practice. Rather, it was, as characterized by the Second Circuit, to provide "permissive authorization to bring actions in state courts" (*Foxhall Realty Law Offs., Inc. v Telecommunications Premium Servs., Ltd., supra* at 438). Stated otherwise, it was to provide for such private rights of action only if, and then only to the extent, permitted by state law. Thus, application of CPLR 901 (b) to a private right of action under the TCPA would not "impose unnecessary burdens upon rights of recovery authorized by federal law" or "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Rather, it would be completely consistent with the same. Finally, given the lack of any federal forum for a private right of action under TCPA, the concern over different outcomes based solely on whether the claim is asserted in state or federal court is not implicated.

The plaintiff's remaining contentions are without merit. Accordingly, the order is affirmed, with one bill of costs to the respondents appearing separately and filing separate briefs.

S. MILLER, J.P., GOLDSTEIN and LIFSON, JJ., concur.

Ordered that the order is affirmed, with one bill of costs to the respondents appearing separately and filing separate briefs.