**FIRST NATIONAL COLLECTION BUREAU, INC., Appellant,**

v.

**Daniele WALKER, Appellee.**

No. 05–10–00129–CV.

Court of Appeals of Texas, Dallas.

July 14, 2011.

330

debt collection calls were made to her cell phone number in violation of the federal Telephone Consumer Protection Act ("TCPA") and section 35.47(f) of the Texas Business and Commerce Code, which was in effect at that time. *See* 47 U.S.C.A. § 227 (West, Westlaw through July 14, 2011); Tex. Bus. & Com.Code Ann. § 35.47(f) (repealed 2007).[1] Following a jury verdict in favor of Walker and some additional findings by the trial court, a judgment was rendered for Walker in the amount of $147,000 against FNCB. In five issues[2] on appeal, FNCB (1) contends the trial court erred by not applying Texas law and, alternatively, applying the TCPA incorrectly and (2) challenges the sufficiency of the evidence to support the jury's verdict and the trial court's findings. We decide against FNCB on its five issues. The trial court's judgment is affirmed.

Robbie Malone, Jacob C. Boswell, Robbie Malone, PLLC, Dallas, for Appellant.

Thomas Dean Malone, Law Offices of Dean Malone, P.C., Bruce K. Thomas, Law Office of Bruce K. Thomas, Dallas, for Appellee.

Before Justices MARTIN RICHTER, LANG, and FILLMORE.

## OPINION

Opinion By Justice LANG.

Appellee Daniele Walker filed suit against appellant First National Collection Bureau, Inc. ("FNCB") alleging automated

## I. FACTUAL AND PROCEDURAL BACKGROUND

FNCB, a third party debt collector, assists other entities in collecting payment on delinquent accounts. In January 2008, FNCB began collection efforts on an account owed by an individual who is not a party to this litigation. However, the telephone number that "came with" that account had been reassigned to Walker's cell phone. During a period of approximately six months, FNCB and two of its vendors, Global Connect and TCN, made multiple calls to Walker's cell phone number in connection with attempts to collect that debt.

1. *See* Act of May 23, 1989, 71st Leg., R.S., ch. 783, § 1, 1989 Tex. Gen. Laws 3469, 3469, amended by Act of May 26, 1999, 76th Leg., R.S., ch. 635, § 1, 1999 Tex. Gen. Laws 3203, 3203, amended by Act of May 24, 2001, 77th Leg., R.S., ch. 1429, § 2, 2001 Tex. Gen. Laws 5102, 5108–09, repealed by Act of May 15, 2007, 80th Leg., R.S., ch. 885, § 2.47(1),

2007 Tex. Gen. Laws 1905, 2082 (eff. Apr. 1, 2009) (now codified at Tex. Bus. & Com.Code Ann. § 305.001–.053 (West 2009)).

2. The first and second of FNCB's five issues contain four subparts each, with the subparts labeled (a)-(d).

Walker filed this lawsuit on June 30, 2008. In her live pleading, Walker contended FNCB made calls to her cell phone using an "automatic telephone dialing system and/or an artificial or prerecorded voice" in violation of the TCPA. According to Walker, such violations entitled her to statutory damages of $500 per call pursuant to the TCPA and section 35.47(f), which provided for a cause of action by "[a] person who receives a communication that violates [the TCPA]." Further, Walker asserted that because FNCB had committed such violations "knowingly," she was entitled to increased damages of up to $1,500 per violation pursuant to those statutes. FNCB filed a general denial answer.

Among the documents admitted into evidence at trial were business records of FNCB. Also, Walker and Scott Carroll, FNCB's vice president of operations and business development, testified.

At the charge conference held after the presentation of evidence, the trial court refused all jury questions and instructions submitted by FNCB and overruled FNCB's objections to the charge.[3] The charge of the court submitted to the jury contained the following three questions:

QUESTION NO. 1:

Were calls made to [the phone number in question] using an automatic telephone dialing system or an artificial voice or a prerecorded voice without the prior express consent of the called party?

. . . .

QUESTION NO. 2:

How many calls were made by [FNCB] or on its behalf to [the phone number in question] using an automatic telephone dialing system or an artificial voice or a prerecorded voice?

. . . .

QUESTION NO. 3:

Did [FNCB] willfully and knowingly make or cause to be made calls to [the phone number in question] when an automatic telephone dialing system or an artificial voice or a prerecorded voice was used?

"Willfully and knowingly" means that [FNCB] knew or should have known that it was violating the federal [TCPA] when it called or caused to be called [the

---

**3.** Objections to the charge of the court by counsel for FNCB included, in relevant part, the following:

> I think [Question Number 1] should follow the Texas v. Blassfax case. I also believe the Court should submit a question about whether or not Ms. Walker received the phone calls, and that is Question Number 2, as well as Question Number 3.
>
> . . . .
>
> Then I believe if the Court is going to submit the Charge in the format that is provided to us, then Question Number 2 should be altered such that it provides a blank to be filled in by the juror for each of the potential calling parties, that specifically being [FNCB] [,] TCN and Global Connect, and I believe that that would be a more proper version of the question if the Court were to submit a question in the format that it is.

. . . .

> . . . And additionally, finally, Your Honor, I would ask that Question Number 3 not be submitted at all. I don't believe there's been sufficient evidence to support a jury question on whether or not [FNCB] willfully and knowingly made or caused to be made calls in knowing that it violated the [TCPA].
>
> Mr. Carroll's testimony from the stand was simply that he had heard sometime in 2008 that there may have been some people in the legal system who were trying to extend that statute to apply to collections. I also believe that based on the evidence before the Court they had no knowledge that Ms. Walker—that they were intentionally violating the act with regard to calling Ms. Walker, and I don't think it's appropriate to submit Question Number 3 in a way that there's insufficient evidence to do so.

phone number in question]. A finding that [FNCB] acted "willfully or knowingly" does not require a finding of bad faith, but only that [FNCB] had reason to know, or should have known, that its conduct would violate federal law.

The jury answered "yes" to questions number one and number three. The jury's response to question number two was "98."

Then, additional argument was presented by the parties and the following additional question was submitted to the jury:

What sum of money, if any, in addition to statutory damages should be awarded against [FNCB] because [FNCB]'s conduct was committed willfully and knowingly?

Please award an additional dollar amount per telephone call made. You may award between $0 and $1000 in additional damages per telephone call. Answer in dollars and cents.

The jury answered "$1000.00 per telephone call."

FNCB filed motions for judgment notwithstanding the verdict and new trial. At a hearing on those motions, FNCB argued in part that the jury's finding as to whether additional damages should be awarded based on "willful and knowing" conduct of FNCB was immaterial because only the trial court had authority to make that decision. The trial court, over objection by Walker and without a jury present, "ac-cepted" additional testimony offered by FNCB regarding the determination of additional damages. The trial court declined to rule at that time as to whether such additional damages were to be determined at the trial court's discretion or by the jury. After taking the matter under advisement, the trial judge proceeded to decide the issues as to additional damages and a final judgment was rendered that ordered that Walker recover $49,000 in statutory damages pursuant to the TCPA and "$98,000 in damages pursuant to the [TCPA] for willful and knowing violations," plus court costs and interest. Additionally, the trial court denied FNCB's motions for judgment notwithstanding the verdict and new trial.

FNCB filed (1) a motion to modify, correct, or reform the judgment and (2) a request for findings of fact and conclusions of law respecting, *inter alia*, "[t]hose portions of the case decided by the court." Then, Walker filed proposed findings of fact and conclusions of law pertaining to the additional damages awarded by the trial court for "willful and knowing" violations of the TCPA. FNCB filed a request for additional findings of fact and conclusions of law as to whether FNCB acted "knowingly or intentionally" pursuant to section 35.47(f). After the trial court signed findings of fact and conclusions of law pertaining to the additional damages,[4] this appeal timely followed.

4. The trial court's findings of fact and conclusions of law provided in relevant part:

*Findings of Fact*

1. On the basis of all the evidence presented, the court finds that [FNCB] willfully or knowingly violated Section 227(b) of the federal [TCPA].

2. As a result of FNCB's willful or knowing violations, $1,000.00 in additional damages for each of the 98 phone calls (as found by the jury) is appropriate considering all the evidence heard by the court.

3. FNCB acted with reckless indifference when calling the Plaintiff's telephone number.

4. FNCB had reason to know, or should have known, that its conduct would violate the [TCPA].

*Conclusions of Law*

1. "Willfully or knowingly," for purposes of the federal [TCPA], means that FNCB knew or should have known that it was violating the federal [TCPA] when it called the Plaintiff's phone number; a find-

## II. FNCB'S ISSUES

### A. Standard of Review

Statutory construction presents a question of law that we review de novo. *See, e.g., City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex.2009); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex.2008).

In a legal sufficiency challenge respecting an issue on which the opposing party had the burden of proof, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex.2001). We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *See, e.g., Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (more than scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

When reviewing the factual sufficiency of the evidence, we examine all the evidence and set aside a finding only if it is so contrary to the evidence as to be clearly wrong and unjust. *Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet. denied). In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex.App.-Dallas 2007, no pet.). We may not substitute our judgment for the fact-finder's, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998); *Hinkle*, 223 S.W.3d at 782.

### B. Applicable Law

#### 1. Telephone Consumer Protection Act

The TCPA provides in relevant part that it shall be unlawful for any person within the United States "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C.A. § 227(b)(1)(A)(iii). Further, in subparagraph (b)(3)(B) of that same section, the act states "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State ... an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3)(B). If a court finds that a defendant "willfully or knowingly" violated subsection (b) or the regulations prescribed under that subsection, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under [subparagraph (b)(3)(B) ]." *Id.*

Subsection (f) of the TCPA, titled "Effect on State Law," provides in relevant part that, with certain exceptions not at

---

ing that FNCB acted willfully or knowingly does not require finding of bad faith, but only that FNCB had reason to know, or should have known, that its conduct would violate federal law.

issue here, the TCPA and regulations prescribed thereunder shall not "preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits ... the use of automatic telephone dialing systems ... [or] the use of artificial or prerecorded voice messages." *Id.* § 227(f)(1).

### 2. Texas Business and Commerce Code

According to section 35.47(f) of the business and commerce code, which the parties do not dispute was in effect at the time of the events at issue,

> A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or this section may bring an action against the person who originates the communication in a court of this state for an injunction, damages in the amount provided by this subsection, or both. A plaintiff prevailing in an action for damages under this subsection is entitled to the greater of $500 for each violation or the person's actual damages, except that the court may increase the amount of the award to not more than the greater of $1,500 for each violation or three times the person's actual damages if the court finds that the defendant committed the violation knowingly or intentionally.

TEX. BUS. & COM.CODE ANN. § 35.47(f).

### 3. Supremacy Clause

According to the Supremacy Clause of the United States Constitution, "[t]his Constitution, and the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. The United States Supreme Court has stated

> [T]he Constitution and laws passed pursuant to it are as much laws in the State as laws passed by the state legislature. The Supremacy Clause makes those laws "the supreme Law of the Land," and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure.

*Howlett v. Rose,* 496 U.S. 356, 367, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Thus, it is generally true that states may not decline to recognize or enforce federal law. *Id.* at 371, 110 S.Ct. 2430; *see The Chair King, Inc. v. GTE Mobilnet of Houston, Inc.,* 184 S.W.3d 707, 712 (Tex.2006). Further, "the federal law that states are required to enforce must be applied according to its terms." *Chair King,* 184 S.W.3d at 712. State laws that conflict with federal law are generally without effect. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981).

### 4. Statutory Construction

In matters of statutory construction, courts must give effect to the unambiguously expressed intent of the legislature. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Galbraith Eng'g Consultants, Inc. v. Pochucha,* 290 S.W.3d 863, 867 (Tex.2009). Under settled principles of statutory construction, we must first determine whether statutory text is plain and unambiguous. *Carcieri v. Salazar,* 555 U.S. 379, 129 S.Ct. 1058, 1063, 172 L.Ed.2d 791 (2009) (citing *U.S. v. Gonzales,* 520 U.S. 1, 4, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)); *see also N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (in determining congressional intent, analysis begins with interpretation of statutory text and "move[s] on, as need be, to the structure and purpose of the Act

in which it occurs"). If it is, we must apply the statute according to its terms. *Carcieri*, 129 S.Ct. at 1064 (citing *Dodd v. U.S.*, 545 U.S. 353, 359, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005)); *see also Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex.1997) (in construing statute, court's primary objective is to give effect to legislature's intent by considering plain meaning of enactment). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. U.S.*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979); *see also* TEX. GOV'T CODE ANN. § 311.011 (West 2005) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage").

■ State courts have the authority to render binding decisions based on their interpretation of federal law unless a federal statute provides for exclusive federal jurisdiction. *See ASARCO, Inc. v. Kadish*, 490 U.S. 605, 617, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989); *In re Devon Energy Corp.*, 332 S.W.3d 543, 549 (Tex.App.-Houston [1st Dist.] 2009, orig. proceeding). Texas state courts interpret federal law independently, though "we typically seek guidance from among the decisions of the lower federal courts." *Hassan v. Greater Houston Transp. Co.*, 237 S.W.3d 727, 731 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (citing *Kiefer v. Cont'l Airlines, Inc.*, 882 S.W.2d 496, 502 (Tex.App.-Houston [1st Dist.] 1994), *aff'd*, 920 S.W.2d 274 (Tex.1996)). Although decisions of the federal courts of appeals do not bind Texas courts, we receive them "with respectful consideration." *Id.; see also Christus Health Gulf Coast, Inc. v. Aetna, Inc.*, 237 S.W.3d 338, 343 n. 8 (Tex.2007).

### 5. Preservation of Error

■ Generally, a complaint not presented to the trial court by a timely, specific objection is not preserved for appeal. *See* TEX.R.APP. P. 33.1(a). An objection is timely urged when asserted at either the earliest opportunity or when the potential error becomes apparent. *Hoxie Implement Co. v. Baker*, 65 S.W.3d 140, 152 (Tex.App.-Amarillo 2001, pet. denied).

With respect to jury charge error, the Texas Supreme Court has stated "[t]here should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992); *see also* TEX.R. CIV. P. 272 (any charge objections not presented before charge is read to jury "shall be considered as waived"); TEX.R. CIV. P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection.").

■ To preserve error for a legal sufficiency issue as to a jury trial, "the appellant must raise the issue through one of the following: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial." *Martin v. Martin*, 326 S.W.3d 741, 746–47 (Tex.App.-Texarkana 2010, pet. denied) (citing *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991); *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied)); *accord Deatley v. Rodriguez*, 246 S.W.3d 848, 850 (Tex.App.-Dallas 2008, no pet.). To complain on appeal about the factual sufficiency of the evidence in a jury trial, the party

must present the specific complaint to the trial court in a motion for new trial. TEX.R. CIV. P. 324(b); *Cecil,* 804 S.W.2d at 510.

### C. Analysis

**1. Applicability of TCPA and Section 35.47(f) to Debt Collection Calls**

■ We begin with subpart (a) of FNCB's first issue and subpart (a) of FNCB's second issue, which we address together. In those two points, FNCB contends (1) "Texas law does not apply the [TCPA] to debt collection activities" and (2) "[t]he TCPA does not apply to debt collection calls." Walker asserts, in part, that FNCB has failed to preserve these points for appeal because FNCB made no objections during the charge conference challenging the applicability of the TCPA and section 35.47(f) to debt collection activities. We agree.

The record shows FNCB made no objection on such grounds during the charge conference. In its motions for new trial and to modify, correct, or reform the judgment, FNCB challenged the application of both statutes to debt collection calls. However, those challenges came too late. *See* TEX.R. CIV. P. 272 (any charge objections not presented before charge is read to jury "shall be considered as waived"); *Kirkpatrick v. Mem'l Hosp. of Garland,* 862 S.W.2d 762, 769 (Tex.App.-Dallas 1993, writ denied) ("Objections to the charge in a motion for new trial are untimely and preserve nothing for review."); *see also* TEX.R.APP. P. 33.1(a). Accordingly, we conclude FNCB has not preserved error as to subpart (a) of its first issue or subpart (a) of its second issue.

**2. Limitation of TCPA Action to Calls "Received"**

In subpart (b) of its first issue, FNCB contends the trial court "erred by not asking the jury how many TCPA-violative calls were 'received' by [Walker]." According to FNCB, states that choose to enforce the TCPA "may establish more or less restrictive provisions." FNCB argues the language of section 35.47(f) "narrowed the scope of the state's private right of action under the TCPA to only those communications actually 'received' by a person."[5] Therefore, FNCB contends, "[u]nder Texas law, a plaintiff must prove that she actually received communications violative of the TCPA, rather than merely pointing to attempts."

Walker responds that "[a] state cannot amend a federal statute, and Texas did not purport to do so." Walker asserts (1) if a conflict exists between the TCPA and state enabling legislation, federal law controls pursuant to the Supremacy Clause and (2) in any event, the language of the federal and Texas statutes can be harmonized and thus there is no conflict. Additionally, Walker contends FNCB has not preserved this issue for review.

■ As to preservation of this issue, the record shows that in the trial court, FNCB submitted proposed jury charge questions asking the jury whether Walker "received" calls made by FNCB and how many such calls were "received" by Walker. The trial court refused those questions. During the charge conference, FNCB objected to question number one of the charge of the court because "the Court

---

5. As described above, section 35.47(f) provided, in part, "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or this section may bring an action against the person who originates the communication in a court of this state for an injunction, damages in the amount provided by this subsection, or both." TEX. BUS. & COM. CODE ANN. § 35.47(f).

should submit a question about whether or not Ms. Walker received the phone calls." FNCB's objection was overruled. Consequently, we conclude FNCB has preserved this issue for this Court's review. *See* Tex.R. Civ. P. 272, 274; Tex.R.App. P. 33.1(a).

■ FNCB asserts several arguments respecting this issue, and we consider those arguments in turn. First, we address FNCB's underlying contention that states that choose to enforce the TCPA "may establish more or less restrictive provisions," i.e., Texas was authorized to enact legislation that provides violations include only communications that are "received." In asserting that contention, FNCB relies primarily on *Chair King*. *See* 184 S.W.3d at 707.[6] FNCB quotes the supreme court's statement in *Chair King* that "Congress clearly did not intend the TCPA to establish a ceiling if states decided to be more aggressive in their approach, but it does not necessarily follow that Congress intended the TCPA to be a mandatory floor for private enforcement whether or not a state chose to allow it." *See id.* FNCB interprets the supreme court's statement to have been made in the context of addressing "the question of whether the TCPA forced a state to take all-or-none of the statute." However, we disagree with FNCB's interpretation. The quoted statement from *Chair King* was made by the court in the context of rejecting an argument that the language of the TCPA foreclosed an "opt in" interpretation. *Id.* at 718. The question of whether states must "take all-or-none" of the TCPA was simply not addressed in *Chair King*.

Next, we address FNCB's assertion that state laws that affect the application of the TCPA, including section 35.47(f)'s provision that "limits TCPA claims to violative communications actually received," do not violate the Supremacy Clause and must be enforced because "[b]ased on the purpose and plain language of the [TCPA], Congress intended significant deference to states to determine if and to what extent it [sic] wished to employ the authority it [sic] was given." In support of that assertion, FNCB cites the supreme court's description of the purpose of the TCPA in *Chair King:* "to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited automated telephone calls ... and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers.'" *Chair King,* 184 S.W.3d at 709. Further, FNCB cites the language in subsection (b)(3) of the TCPA granting a private cause of action in state court "if otherwise permitted by the laws or rules of court of a State." 47 U.S.C.A. § 227(b)(3).[7]

---

6. *Chair King* involved an action brought by recipients of unsolicited telecopied or "fax" advertisements against the senders of those advertisements. 184 S.W.3d at 708–09. The fax recipients asserted, *inter alia,* a private damage claim under the TCPA. *Id.* The Texas Supreme Court concluded (1) before the private right of action created by the TCPA is cognizable in state court, states must enact enabling legislation, or "opt in," and (2) Texas did not otherwise permit a cause of action for the receipt of unsolicited fax advertisements until it amended the business and commerce code to allow parties to bring suit in state court for TCPA violations, and thus the recipients had no actionable claim respecting unsolicited fax advertisements sent before such amendment. *Id.* at 718.

7. FNCB discusses several federal and state cases from New York in which courts in that state concluded state law governs whether a class action can lie under the TCPA. *See Holster v. Gatco, Inc.,* 485 F.Supp.2d 179 (E.D.N.Y.2007); *Bonime v. Avaya, Inc.,* No. 06–CV–1630, 2006 WL 3751219 (E.D.N.Y. Dec. 20, 2006); *Rudgayzer & Gratt v. Cape Canaveral Tour & Travel, Inc.,* 22 A.D.3d 148,

Once again, we cannot agree with FNCB's position. FNCB's arguments are not consistent with the Supremacy Clause or with the provisions of the TCPA that address the extent to which state law is preempted by the TCPA. *See* U.S. CONST. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."); 47 U.S.C.A. § 227(e)(1). Under subsection (e)(1), titled "State Law Not Preempted," the TCPA makes clear it does not preempt any state law that imposes "more restrictive intrastate requirements or regulations" on certain types of equipment and communications. *See* 47 U.S.C.A. § 227(e)(1). No other limits on preemption are identified. *See id.* FNCB provides no explanation how the scope of preemption described by the clear language of subsection (e)(1) is inconsistent with the purpose of the TCPA as stated in *Chair King. See* 184 S.W.3d at 709. Further, FNCB does not address the application of the preemption language in subsection (e)(1). *See* 47 U.S.C.A. § 227(e)(1). FNCB asserts, without citing any authority

> Congress passed the TCPA in order to help States regulate telemarketing, but Congress hinged the applicability of the statute on the state's acceptance of the law. Texas has decided to "opt in" to the statute's protection and, by the words of the legislature, has explained *to what extent* it has opted in. According to the very words of the TCPA, Texas has reserved a right to expand or re-

strict the statute's requirements under its police power. Texas has decided to restrict the application of the statute to communications actually received by plaintiffs. To find otherwise flies in the face of existing precedent and is contrary to state law.

(emphasis original).

FNCB's argument is contrary to the language of subsection (e)(1). *See id.* That subsection makes it clear that a state that "opts in" is not free "to expand or restrict the statute's requirements" as the state wishes. Subsection (e)(1) specifies what is *not* preempted by federal law, namely "more restrictive intrastate requirements or regulations." *Id.* FNCB does not address whether a provision that restricts the private right of action to calls "received" is "more restrictive," as described in subsection (e)(1), than the federal law that denominates an actionable call as one "made." FNCB simply refers to section 35.47(f) as having "narrowed the scope of the state's private right of action under the TCPA to only those communications actually 'received' by a person," and asserts Texas made a "decision to limit its cause of action to only communications received." As we interpret FNCB's argument, the "narrowed . . . scope" of calls "received" effects a reduced exposure to damages for a defendant, that is, if the calls "received" are fewer in number than the calls "made," that smaller number rather than the greater is multiplied times the statutory damages amount. FNCB demonstrates that effect by citing us to the record in this case and the case law. FNCB describes the evidence as showing

---

799 N.Y.S.2d 795 (N.Y.App.Div.2005). Courts in those cases concluded that because the TCPA does not "specifically" authorize a class action, class actions under the TCPA were precluded by a New York state law that allowed for class actions only where specifically authorized by the statute creating or

imposing the penalty or measure of recovery involved. *See Rudgayzer & Gratt*, 799 N.Y.S.2d at 800. Unlike the case before us, those class action cases did not involve language in a state statute alleged to conflict with the language of the TCPA. Therefore, we cannot agree those cases are persuasive.

FNCB's records reflect ninety-eight calls were made to Walker, but, on the other hand, Walker testified she only received four calls. We are also referred to *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892 (W.D.Tex.2001), where the trial court found "not every fax sent reached its intended recipient" and only "75% of those faxes were actually received." *Id.* at 895 n. 2, 900. It was, in part, on that basis that the trial court in that case limited the actionable communications to those received. *Id.* at 900.

We conclude the analysis offered by FNCB does indeed demonstrate some likelihood of reduced damage exposure to a defendant where a calls "received" standard is applied. However, using that analysis, it follows that the "narrowed ... scope" of section 35.47(f) is actually less restrictive than the TCPA standard of calls "made." *See* 47 U.S.C.A. § 227(b)(1)(A)(iii); TEX. BUS. & COM.CODE ANN. § 35.47(f). In view of the direction in subsection (e)(1) that "more restrictive" requirements are not preempted, it follows that the converse is true; less restrictive or narrower, less onerous restrictions are preempted. *Cf. United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 403 (Tex.2007) (under statutory interpretation tool of *expressio unius est exclusio alterius*, inclusion of specific limitation implies exclusion of all others). Accordingly, assuming without deciding Texas law was intended to create a right of action only for calls "received," such law is preempted by the TCPA. *See* 47 U.S.C.A. § 227(e)(1). Any other interpretation would not only violate subsection (e)(1), but would also be violative of the Supremacy Clause. *See id.*; U.S. CONST. art. VI, cl. 2.

Finally, we address FNCB's contention that this Court and others have limited TCPA violations to communications "received." In support of that contention, FNCB cites *Intercontinental Hotels Corp. v. Girards*, 217 S.W.3d 736 (Tex.App.-Dallas 2007, no pet.); *Chair King*; and *American Blastfax*.

*Intercontinental Hotels Corp.* involved a fax recipient who brought a purported class action against defendant Intercontinental Hotels Corporation and related entities ("Intercontinental") for sending unsolicited faxes in violation of the TCPA during the year 2000. *Intercontinental Hotels Corp.*, 217 S.W.3d at 737. The trial court certified as a class those persons billed by the phone company for a number confirmed to have received a fax from Intercontinental according to the daily confirmation logs of American Blast Fax ("ABF"), the fax delivery company used by Intercontinental. *Id.* at 738. On appeal, this Court reversed the certification of the class. *Id.* This Court stated the record showed that "while [the plaintiffs] are apparently able to identify numbers to which ABF sent faxes and billing numbers associated with those numbers, the records [of the phone company] do not go back to 2000 to show the relationship between billing numbers and working telephone numbers in 2000." *Id.* Thus, this Court stated, "the recipients of Intercontinental's faxes in 2000 are not presently ascertainable." *Id.* While this Court used the word "recipients" in its analysis, the issue in *Intercontinental Hotels Corp.* was whether the members of the class were subject to identification. *Id.* Because the issue of whether a communication must be received in order to be actionable under the TCPA was not addressed in *Intercontinental Hotels Corp.*, we cannot agree that case is instructive here. Likewise, while the supreme court in *Chair King* stated that the TCPA "grants those who receive illegal faxes a private cause of action in state court," *Chair King* did not address whether a TCPA cause of action is limited to

communications received. *See Chair King*, 184 S.W.3d at 708.

Now, as to *American Blastfax*, as we described above in part, the court found the defendants sent 1.25 million unsolicited fax advertisements per month during the relevant time frame and "75% of these faxes actually were received." *Am. Blastfax*, 164 F.Supp.2d at 900. Based on that finding, the court concluded "defendants violated the TCPA a total of 937,500 times per month [1.25 million multiplied by 75%]" during the relevant time period. *Id.* However, the court in *American Blastfax* did not cite section 35.47(f) or any other authority for its apparent conclusion that TCPA violations are limited to communications received, nor did it otherwise explain the reasoning upon which that apparent conclusion was based. *See id.* Therefore, we do not find *American Blastfax* persuasive.

FNCB does not assert, and the record does not show, that the calls at issue were not "made" to Walker. *See* 47 U.S.C.A. § 227(b)(1)(A)(iii). Accordingly, we decide against FNCB on subpart (b) of its first issue.

### 3. Vicarious Liability of FNCB for Calls Made by Vendors

In subpart (c) of its first issue and subpart (d) of its second issue, FNCB contends (1) the trial court erroneously held FNCB vicariously liable under Texas law for calls "caused to be made" by it or made "on its behalf" and (2) the TCPA does not impose automatic vicarious liability for the actions of independent contractors.

 Walker responds (1) the record contains ample evidence to support a common law agency relationship between FNCB and its vendors and (2) "every court considering the issue has rejected [FNCB's] position that a party cannot be held liable [under the TCPA] for the acts of independent contractors hired to make calls on the party's behalf." Additionally, Walker asserts FNCB failed to preserve error as to this issue. As to this last assertion, we agree.

The record shows that FNCB's proposed jury questions and instructions, which were refused by the trial court, did not include any questions or instructions pertaining to vicarious liability. During the charge conference, the trial court overruled objections by FNCB that (1) question number two of the charge of the court "should be altered such that it provides a blank to be filled in by the juror for each of the potential calling parties" because that would be "a more proper version of the question" and (2) question number three should "not be submitted at all" because the evidence was insufficient "to support a jury question on whether or not [FNCB] willfully and knowingly made or caused to be made calls in knowing that it violated the [TCPA]." In its post-trial motions, FNCB asserted (1) the trial court "erred in the charge submission by submitting 'on behalf or caused to be made' language in a couple of questions" and (2) "[t]he judgment entered by the court is based improperly on an incorrect submission." In its brief in this Court, FNCB asserts that questions number two and number three of the jury charge "demonstrate that the [trial] court assumed FNCB could be held automatically liable for the actions of third parties."

The record does not show the legal point FNCB asserts now was raised by objection in the trial court. FNCB did not specifically object to the phrase "on its behalf" in question number two of the charge of the court or the phrase "cause to be made" in question number three. In objecting to question number two, FNCB did not state why its requested version would be "more

proper" or request wording that would preclude liability of FNCB for calls made by its vendors.

Further, the record shows Carroll testified on cross-examination, without objection, that (1) FNCB requested that Global Connect and TCN make telephone calls "on behalf" of FNCB using an automatic telephone dialing system and/or artificial or prerecorded voices; (2) FNCB expected Global Connect and TCN to make those telephone calls at FNCB's direction; (3) on a daily basis, FNCB decided which accounts to send to Global Connect and TCN for that particular day and supplied the vendors with the data files for those accounts; (4) the calls were made by the vendors on the same day the data files were supplied; (5) FNCB instructed Global Connect and TCN not to make more than two calls per day to any one of the telephone numbers; (6) the vendors left prerecorded messages providing FNCB's telephone number and/or stating that the calls were from FNCB; and (7) if a "live person" picked up the phone, the calling equipment used by Global Connect and TCN transferred the calls to FNCB.

The Texas Supreme Court has stated "[t]here should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Payne*, 838 S.W.2d at 241. On this record, we cannot conclude FNCB "made the trial court aware of the complaint, timely and plainly." *Id.*; Tex. R. Civ. P. 274; *see also Kirkpatrick*, 862 S.W.2d at 769; Tex.R.App. P. 33.1(a). Because the issue was not preserved, we decide against FNCB on subpart (c) of its first issue and subpart (d) of its second issue.

### 4. Standard for Determining Additional Damages

■■■ In subpart (d) of its first issue, FNCB contends the trial court "used the wrong standard for finding additional damages under Texas law." According to FNCB, rather than applying the standard in section 35.47(f), which provided that a court may increase the amount of damages awarded if it finds the defendant committed a violation "knowingly or intentionally," the trial court erred by applying the standard from the TCPA, which permits a court to increase damages upon a finding that a defendant "willfully or knowingly" violated the law.

Walker asserts (1) "there exists no basis for state trial court[s] to apply only a portion of the federal statute, and ignore the rest" and (2) regardless, FNCB could not have been harmed by application of the federal standard because a "knowing" violation is set out in both statutes and, in the alternative, the trial court found FNCB committed violations "willfully or knowingly." Additionally, Walker contends FNCB has waived this claim of error.

Generally, a complaint not presented to the trial court by a timely, specific objection is not preserved for appeal. *See* Tex. R.App. P. 33.1(a). An objection is timely urged when asserted at either the earliest opportunity or when the potential error becomes apparent. *Hoxie Implement Co.*, 65 S.W.3d at 152. The record shows FNCB did not object to the standard of "willfully and knowingly" used in the jury charge. Further, throughout trial and the post-trial proceedings, the record reflects FNCB stated the standard for additional damages as "willfully and knowingly." It was not until FNCB filed its request for additional findings of fact and conclusions of law that it stated the standard for additional damages as requiring a finding that the defendant acted "knowingly or inten-

tionally" pursuant to section 35.47(f). On this record, we conclude FNCB has not preserved this issue for appellate review. *See id.* We decide against FNCB on subpart (d) of its first issue.

### 5. Use of "Automatic Telephone Dialing System" or "Artificial or Prerecorded Voice"

Next, we address together subparts (b) and (c) of FNCB's second issue. In subpart (b) of that issue, FNCB contends "[o]nly artificial or prerecorded voice messages can violate section 227(b)(1)(A)" of the TCPA in this case because "debt collection calls cannot be considered to be autodialed calls under the TCPA's definition." According to FNCB, a jury finding that each of the calls at issue used artificial or prerecorded voice messages is "contrary to the great weight of the evidence." In subpart (c), FNCB contends that even if the calls at issue are considered to be calls using an automatic telephone dialing system, "[t]here is no evidence that every call made to [Walker] used an automated telephone dialing system or an artificial or prerecorded voice," and a finding to that effect was "clearly wrong and manifestly unjust." We construe these issues to assert the evidence is legally and factually insufficient to support the challenged jury findings.

Walker responds that the evidence is sufficient to support the jury's verdict. Further, Walker asserts these issue were not raised below and therefore were waived.

■ In its motion for new trial, FNCB contended "there is insufficient evidence to support the findings of the jury," challenged the sufficiency of the evidence to show the use of "autodialers," and asserted there was no evidence of more than four calls using prerecorded voices. Accordingly, we conclude FNCB preserved these issues for review. *See Deatley,* 246 S.W.3d at 850; *Martin,* 326 S.W.3d at 746–47; TEX.R. CIV. P. 324(b).

■ Even assuming without deciding that, as argued by FNCB, only artificial or prerecorded voice messages can violate section 227(b)(1)(A) in this case, the evidence in the record is legally and factually sufficient to support a finding that each call at issue used one of those two technologies. The record shows Walker testified she listened to only two voice messages in their entirety and parts of voice messages on less than five other occasions. However, Carroll's testimony on cross-examination included the following exchange:

Q. .... Isn't it true that FNCB requested that TCN make telephone calls on behalf of FNCB?

A. It's true that we—we outsourced those calls for them to make on our behalf; yes.

Q. Okay. And isn't it true that FNCB asked it to do so using an automatic telephone dialing system?

A. Their system, yes.

Q. Correct. And isn't it true that FNCB asked that TCN do so using prerecorded messages and/or artificial or prerecorded voices?

A. Yes.

Q. And all the questions I just asked you about TCN, is that also true with Global Connect?

A. Yes, sir.

Additionally, with respect to FNCB's records of the calls made to Walker's cell phone number, Carroll testified on cross-examination as follows:

Q. And all these calls are made on FNCB's behalf, is it not?

A. Yes.

Q. In fact, there was no really—there's no human—and this is stating the

obvious—there was no human making any of these telephone calls?

A. Correct.

On this record, we conclude there is more than a scintilla of evidence to support the jury's finding that every call made to Walker used an artificial or prerecorded voice. *See Formosa Plastics Corp. USA,* 960 S.W.2d at 48; *see also King Ranch, Inc.,* 118 S.W.3d at 751 (more than scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions"). We cannot agree with FNCB that the evidence is legally insufficient. *See Formosa Plastics Corp. USA,* 960 S.W.2d at 48. Further, with respect to FNCB's factual sufficiency challenge, we cannot agree with FNCB that the jury finding in dispute is so contrary to the evidence as to be clearly wrong and unjust. *See Cameron,* 158 S.W.3d at 683. We decide against FNCB on subparts (b) and (c) of its second issue.

### 6. Statutory Damages Per Violation

FNCB asserts in its third issue that "[t]he [TCPA] itself and the Act as applied through Texas law permits a finding of 'up to $500' in statutory damages per violation." According to FNCB, the trial court erred by denying FNCB's request to allow the jury "to determine what amount, if any, to give [Walker] for receiving the violative calls, up to $500."

Walker asserts the language of subsection (b)(3)(B) does not include the qualification "up to." According to Walker, "[t]he law requires that this Court limit the statute to its plain language." Further, Walker contends this issue was not preserved by FNCB.

▪ The record shows FNCB's proposed jury submissions included a question in which the jury was instructed that it could award Walker "up to $500.00 in damages" for each violative call. That question was among those refused by the trial court. Further, because the damage issue was ultimately referred to the trial judge and was a "matter of law" to be determined by the trial court, FNCB asserted in its post-trial motions that the statutory damage provisions at issue should be interpreted to allow for recovery of initial damages of "up to" $500 per violation. Accordingly, we conclude FNCB has preserved this issue for this Court's review. *See* TEX.R. CIV. P. 272, 274; *see also* TEX. R.APP. P. 33.1(a).

In its briefing on this issue, FNCB addresses both the TCPA and section 35.47(f), which contain substantially similar provisions respecting initial damages. *See* 47 U.S.C.A. § 227(b)(3)(B); TEX. BUS. & COM.CODE ANN. § 35.47(f). However, we concluded above that in accordance with the Supremacy Clause, the TCPA must be applied in Texas according to its terms. *See* U.S. CONST. art. VI, cl. 2. Therefore, we consider only the TCPA in our analysis.

▪ Now, in order to determine whether the TCPA permits a finding of "up to $500," we consider the statute itself and the case law. Subsection (b)(3)(B) of the TCPA provides in relevant part that "[a] person or entity may, if otherwise permitted by the laws or rules of a court of a State, bring in an appropriate court of that State ... an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C.A. § 227(b)(3)(B). In support of its argument, FNCB cites again *American Blastfax. See* 164 F.Supp.2d at 892. In that case, the State of Texas brought an action against the sender of unsolicited fax advertisements pursuant to section 227(f)(1) of the TCPA, which provides for actions by states' attorneys general for

TCPA violations. *Id.* at 895–97. The trial court found the defendants had committed 937,500 violations of the TCPA per month for approximately five months. *Id.* at 900. The State sought $500 per violation, but the court found it would be "inequitable and unreasonable" to award that amount because it would result in a total of $2.34 billion in damages, while the undisputed cost incurred by each fax recipient was only seven cents per fax page. *Id.* Accordingly, the statute was interpreted as providing for "up to" $500 per violation, for a total of $459,375. *Id.*

However, we cannot agree with FNCB that *American Blastfax* stands for the proposition that statutory damages under the TCPA subsection at issue here are discretionary. The section of the TCPA addressed by the federal court in *American Blastfax* is not the same section applied in this case. *American Blastfax* concerned interpretation of TCPA subsection (f)(1), which provides that "the State" may bring "an action to recover for actual monetary loss or receive $500 in damages for each violation." 47 U.S.C.A. § 227(f)(1). In contrast with subsection (f)(1), the plain language of subsection (b)(3)(B), the subsection at issue in this case, states that a "person or entity" may bring "an action to recover for actual monetary loss" from a TCPA violation or "to receive $500 in damages" for each such violation, "whichever is greater." *Id.* § 227(b)(3)(B). The $500 damage provision in subsection (b)(3)(B) is a specific, set number. A private litigant has a choice to bring an action for $500 per violation or for the actual monetary loss if it is greater than the set sum of $500. *Id.; Fillichio v. M.R.S. Assocs., Inc.,* No. 09–61629–CIV, 2010 WL 4261442, at *4 (S.D.Fla. Oct. 19, 2010) (rejecting argument that *American Blastfax* supports proposition that section 227(b)(3)(B) damages are discretionary). As stated by the federal district court in *Fillichio,* "[t]here

would be no point in including the language 'whichever is greater' if the statutory damages provision was meant to be discretionary." *Fillichio,* 2010 WL 4261442, at *4 (citing *U.S. v. Nordic Vill., Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (it is a "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect")).

We conclude the trial court did not err by denying FNCB's request that the jury be instructed that it could award "up to" $500 in damages per violation in this case. We decide FNCB's third issue against it.

### 7. "Clear and Convincing" Burden of Proof as to Willful or Knowing Conduct

 Finally, we address FNCB's fourth and fifth issues together because FNCB contends, *inter alia,* in both issues that the burden of proof for the predicate to additional damages, "willfully or knowingly," is clear and convincing evidence.

In its fourth issue, FNCB contends "[a] finding that a party willfully or knowingly violated the [TCPA] should be proven by clear and convincing evidence." According to FNCB, section 41.003 of the Texas Civil Practice and Remedies Code requires such a standard "for finding aggravated conduct." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003 (West 2008). FNCB asserts it "requested that the trial court require any finding that FNCB acted 'willfully or knowingly' be proven by clear and convincing evidence." FNCB argues the trial court erred by denying that request and "permit[ting] either the jury or the [trial] court to reach its decision based on a preponderance of the evidence."

Walker asserts "[t]he trial court applied the correct burden of proof in finding that [FNCB] willfully or knowingly violated the

[TCPA]." Additionally, Walker asserts FNCB did not preserve that issue for this Court's review. Walker argues that although FNCB submitted a proposed jury question on additional damages that "included clear and convincing language," that question did not rely on the civil practice and remedies code as authority. Further, Walker contends that, over her objection, FNCB "persuaded the [trial court] that the issue of additional damages was an issue for the [trial court], and that the jury's verdict on additional damages should be treated as advisory." According to Walker, "[h]aving gotten the factfinder it requested on this issue, and having failed to request a finding as to the standard of proof the factfinder applied, [FNCB] can have no complaint on appeal."

FNCB's requested jury submissions included the following question: "Do you find by clear and convincing evidence that [FNCB] knowingly and willfully made calls using automated dialer and a prerecorded or artificial voice to [Walker]?" The trial court refused that question. However, the record shows the issue of additional damages was decided by the trial court at FNCB's request. FNCB did not assert during or after trial that a clear and convincing standard should be applied by the trial court in deciding that issue. Further, although FNCB filed a request for additional findings of fact and conclusions of law respecting the additional damages, FNCB did not request any finding or conclusion as to the burden of proof applied. The record does not show what standard the trial court used in finding such damages were warranted. *See In re D.E.W.*, 654 S.W.2d 33, 35 (Tex.App.-Fort Worth 1983, writ ref'd n.r.e.) (trial court sitting without jury is presumed to have used correct standard of proof absent showing to contrary, and burden is on appellant to show proper standard was not applied). Therefore, this issue presents nothing for this Court's review.

 However, in its fifth issue, FNCB asserts a factual sufficiency challenge as to "[t]he fact-finder's determination that [FNCB] willfully or knowingly violated the [TCPA]" and contends "[t]he evidence before the court does not amount to clear and convincing evidence that FNCB knew of the TCPA's prohibitions, knew they applied to debt collection, and knew it did not have permission to call Walker." Because the applicability of a "clear and convincing" burden of proof is determinative as to the resolution of FNCB's fifth issue, we address that burden of proof issue.

FNCB contends the TCPA and section 35.47 "allow for what are, essentially, exemplary damages" because the requirements for such damages in subsection (b)(3) and section 35.47(f) "focus[ ] exclusively on the defendant's mental state at the time of the infractions, much like a finding for exemplary or punitive damages." According to FNCB, section 41.003 of the civil practice and remedies code and the standards for recovery of "exemplary damages" apply. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003. Those standards include a burden of proof of "clear and convincing" evidence. *Id.* We cannot agree with FNCB.

The TCPA contains no requirement that additional damages pursuant to subsection (b)(3) must be proven by a "clear and convincing" standard. *See* 47 U.S.C.A. § 227(b)(3). Further, FNCB cites no authority, and we have found none, requiring the application of section 41.003 to the TCPA's statutory provision for additional damages. *Cf.* TEX. CIV. PRAC. & REM.CODE ANN. § 41.004(b) ("Exemplary damages may not be awarded to a claimant who elects to have his recovery multiplied under another statute."). With respect to FNCB's assertions that "Texas law" requires the burden of proof at issue, we concluded above that in an action pursuant

to section 35.47(f) for violation of the TCPA, we apply the TCPA according to its terms. *See* U.S. Const. art. VI, cl. 2. For these reasons, we conclude the burden of proof identified in section 41.003 is inapplicable to section 35.47(f)'s statutory provision for additional damages.

We conclude the "willful or knowing" conduct of FNCB was not required to be proven by clear and convincing evidence. FNCB's fifth issue challenges only whether a "clear and convincing" burden of proof was met as to willful and knowing conduct by FNCB, and does not challenge the factual sufficiency of the evidence to meet any other burden of proof. We decide against FNCB on its fourth and fifth issues.

### III. CONCLUSION

Having decided against FNCB on all five of its issues,[8] we affirm the trial court's judgment.

---

8. In the initial portion of its first issue, FNCB asserts, "The trial court committed reversible error by refusing to apply Texas law." To the extent FNCB intends that statement to constitute an issue separate from the subparts that follow that statement, such issue was not raised in the trial court. Therefore, such issue presents nothing for this Court's review. *See* Tex.R.App. P. 33.1(a).