07-1136-cv
*Bonime v. Avaya, Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

August Term, 2007

(Argued: March 12, 2008                    Decided: October 31, 2008)

Docket No.  07-1136-cv

_____

HAROLD BONIME, Individually and
on behalf of all others similarly situated

*Plaintiff-Appellant*,

— v .—

AVAYA, INC.,

*Defendant-Appellee.*

_____

Before:     CALABRESI, B.D. PARKER, *Circuit Judges*,
            and UNDERHILL, *District Judge.*[1]

_____

Appeal from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*) dismissing claims brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3).  Affirmed.  Judge Calabresi concurs in a separate opinion.

_____

[1]The Honorable Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting by designation.

TODD C. BANK, Kew Gardens, N.Y., *for Plaintiff-Appellant*.

GLENN C. COLTON (Tonia Ouellette Klausner, *on the brief*), Wilson Sonsini Goodrich & Rosati, P.C., New York, N.Y., *for Defendant-Appellee*.

BARRINGTON D. PARKER, *Circuit Judge*:

Harold Bonime brought a putative class action in federal court in New York alleging violations of the Telephone Consumer Protection Act, 47 U.S.C § 227(b)(1)(C) ("TCPA"). Federal jurisdiction was grounded in diversity of citizenship. *See* 28 U.S.C. § 1332(d)(2). The district court dismissed the complaint because New York law does not permit private actions for violations of the TCPA to be brought as class actions. *See* New York Civil Practice Law and Rules 901(b). We agree that N.Y. C.P.L.R. 901(b) applies to such suits, even when a plaintiff has invoked federal diversity jurisdiction.

## BACKGROUND

Bonime, a citizen of New York, appeals from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*) dismissing for lack of subject matter jurisdiction his claim under a provision of the TCPA, which, among other things, regulates unsolicited facsimile communications. *See Bonime v. Avaya, Inc.*, 06 CV 1630 (CBA), 2006 U.S. Dist. LEXIS 91964 (E.D.N.Y. Dec. 20, 2006). Appellee Avaya, Inc., a citizen of Delaware and New Jersey, is a telecommunications company that sells its goods and services through a

network of resellers. Bonime alleges that DJJ Sales Associates Inc., a reseller of Avaya products that possessed "actual authority to act on behalf of [Avaya]," "transmitted a facsimile to [Bonime] that advertised the commercial availability or quality of [Avaya's] goods and services" without Bonime's permission.

Bonime alleges that the transmission of the facsimile violated section 227(b)(1)(C) of the TCPA which makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."[2] Section 227(b)(3) allows a person or entity to, "if otherwise permitted by the laws or rules of court of a

---

[2] Section 227(b)(1)(C) provides that it is unlawful:

> to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless— (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient; (ii) the sender obtained the number of the telephone facsimile machine through— (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D), except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E) . . . .

3

State, bring in an appropriate court of that State," a private action for a violation of the TCPA, and section 227(b)(3)(B) allows a plaintiff who receives an unsolicited fax or is otherwise harmed by an action that violates the TCPA to recover damages for actual monetary loss or $500, whichever is greater.[3]

Bonime sought to represent a purported class, under Fed. R. Civ. P. 23(a) and 23(b)(3), consisting of "all persons. . . to whom [Avaya's] agents transmitted one or more facsimiles advertising [Avaya's] goods and services without the recipient having given . . . express invitation or permission" for a period beginning four years prior to the commencement of the suit. According to the complaint, Avaya's "business partners transmitted facsimiles advertising . . . [Avaya's] goods and services to more than 10,000 recipients" without the recipients' permission. Bonime asserts that the amount in controversy is therefore greater than $5,000,000

---

[3] Section 227(b)(3) provides:

> Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State— (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions.

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

exclusive of interests and costs and that the federal courts consequently have jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). The CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which— (A) any member of a class of plaintiffs is a citizen of a State different from any defendant."

The district court dismissed the complaint for lack of subject matter jurisdiction, reasoning that "Bonime may not assert a class action for statutory damages under the TCPA in New York state and therefore may not utilize CAFA to establish diversity jurisdiction." *Bonime*, 2006 U.S. Dist. LEXIS 91964, at *3. Bonime appealed and we affirm.

**DISCUSSION**

Bonime's lawsuit sits at the intersection of two procedurally unusual laws— the TCPA, which creates a federal claim designed to be brought in state court, and the CAFA, which gives federal courts original jurisdiction over certain class actions brought under state law. The key to determining whether we have jurisdiction, however, lies in understanding the TCPA.

Congress's stated purpose in enacting the TCPA was to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991). While more than forty state legislatures previously enacted measures restricting unsolicited telemarketing, "these had limited

effect because States do not have jurisdiction over interstate calls." *See id*. at 3. The legislative history of the TCPA "indicates that Congress intended the TCPA to provide interstitial law preventing evasion of state law by calling across state lines." *Gottlieb v. Carnival Corp*., 436 F.3d 335, 342 (2d Cir. 2006) (internal quotation marks omitted).

The private right of action created by the TCPA allows a person or entity to, "if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State," an action for a violation of the TCPA. *See* 47 U.S.C. § 227(b)(3). In *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd*., 156 F.3d 432, 435 (2d Cir. 1998), we interpreted section 227(b)(3) to mean that "Congress intended to confer exclusive state court jurisdiction over private rights of action under the TCPA." *See also Gottlieb*, 436 F.3d at 340 (holding that the TCPA created "a private right of action over which federal courts lack federal question jurisdiction"). "Congress thus sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps." *Gottlieb*, 436 F.3d at 342.

Congress's innovation in creating a federal claim which behaved like state law by allowing individuals to sue in state courts under the TCPA "if otherwise permitted by the laws or rules of court of a State," required this Court to decide a novel procedural question: whether a claim generated by a federal law, but required to be brought in state court under the "laws or rules of court of a State," is governed by 28 U.S.C. § 1332(a), which gives federal courts original jurisdiction over civil actions where there is diversity of citizenship and the

6

amount-in-controversy requirement is satisfied?  In other words, should a claim created by section 227(b)(3) be treated like a state cause of action when the jurisdiction of the federal court is grounded in diversity under section 1332(a)?  In *Gottlieb*, we answered that question in the affirmative, concluding that  "Congress did not divest the federal courts of diversity jurisdiction over private actions under the TCPA" since "nothing in § 1332 indicates that diversity jurisdiction does not exist where federally-created causes of action are concerned."  *Gottlieb,* 436 F.3d at 336, 340.

These rulings, however, do not resolve the issue presented by this appeal.  While Bonime brought his TCPA action in federal court, he did not invoke section 1332(a), the general diversity statute.  Instead, Bonime based jurisdiction on section 1332(d)(2)(A) of the CAFA.  Section 1332(d)(2)(A), of course, is part of subsection (d), which is an add-on to the diversity jurisdiction statute. *See Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("CAFA amends the diversity jurisdiction statute by adding § 1332(d), which confers original federal jurisdiction over any class action with minimal diversity (*e.g.*, where at least one plaintiff and one defendant are citizens of different states) and an aggregate amount in controversy of at least $ 5 million (exclusive of interest and costs).").

New York law adds another layer of complexity.  As previously noted, section 227(b)(3) allows a person or entity "if otherwise permitted by the laws or rules of court of a State," to sue in state court for a violation of the TCPA.   As the district court correctly noted, "a class action for statutory damages under the TCPA is not actionable in New York state court."  *Bonime*, 2006

U.S. Dist. LEXIS 91964, at *5.  Plaintiff's inability to bring such a class action stems from N.Y. C.P.L.R. 901(b), which provides that "Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."  Because the TCPA does not specifically authorize recovery of statutory damages in a class action, New York state courts have held that C.P.L.R. 901(b) bars class actions for statutory damages under the TCPA.  *See, e.g.*, *Leyse v. Flagship Capital Servs. Corp.*, 22 A.D.3d 426, 426 (1st Dep't 2005); *Rudgayzer & Gratt v. Cape Canaveral Tour & Travel, Inc.*, 22 A.D.3d 148, 149 (2d Dep't 2005); *Weber v. Rainbow Software, Inc.*, 21 A.D.3d 411, 411 (2d Dep't 2005).

Bonime's decision to bring a putative class action in federal court under section 1332(d)(2)(A) is undoubtedly motivated by his desire to avoid the barrier erected by C.P.L.R. 901(b).  This tactic, while inventive, fails.  Bonime makes two major points in support of his position:  (1) the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938),[4] under which state substantive law applies to state law claims in federal court, does not apply to his TCPA claims

---

[4] Under *Erie*, "federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  "The line between 'substance' and 'procedure' shifts as the legal context changes."  *Hanna v. Plumer*, 380 U.S. 460, 471 (1965); *cf. Mistretta v. United States*, 488 U.S. 361, 392 (1989) ("[W]e have recognized that the Federal Rules of Civil Procedure regulate matters falling within the uncertain area between substance and procedure, [and] are rationally capable of classification as either . . . .") (internal quotation marks omitted).

because TCPA claims arise under federal and not state law, and (2) that, even if *Erie* did apply, C.P.L.R. 901(b) is procedural, not substantive, and therefore does not apply to TCPA claims brought in federal court. Bonime's arguments fail for two independent reasons.

First, it is correct that the Supreme Court's *Erie* doctrine does not apply directly to the TCPA because it is a federal law. *Erie* regulates the balance of power between the state and federal courts. As Justice Harlan wrote, *Erie* is "one of the modern cornerstones of our federalism, expressing policies that profoundly touch the allocation of judicial power between the state and federal systems." *Hanna v. Plumer*, 380 U.S. 460, 474 (1965) (Harlan, *J.*, concurring); *see also Salve Regina College v. Russell,* 499 U.S. 225, 239 (1991) (identifying "cooperative judicial federalism" as one of the principles "underlying *Erie*"). The scheme of state and federal judicial integration and cooperation created by *Erie* does not directly implicate the TCPA because it is federal law and *Erie* was directed to state-law claims. *See Erie*, 304 U.S. at 78 ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

Bonime's argument is essentially beside the point, however, because Congress directed that the TCPA be applied as if it were a state law. *See Gottlieb*, 436 F.3d at 342-43. In other words, Congress drafted the TCPA so that it would interact with the federal and state judicial systems as would a state law. While the TCPA is not state law, Congress has clearly indicated that the courts should treat it as though it were. And so, for our purposes, it behaves like state law. Because the TCPA functionally operates as state law, we must apply the *Erie* doctrine to

9

the TCPA, though the requirement to do so derives from Congressional instruction, and not from the Supreme Court's decision in *Erie.*

Applying *Erie* leads to the conclusion that federal courts must apply C.P.L.R. 901(b) when faced with putative New York class actions brought under the TCPA even when a plaintiff has invoked federal diversity jurisdiction. As the Supreme Court explained, the twin aims of the *Erie* rule are the "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468. Applying C.P.L.R. 901(b) furthers both of these objectives. New York state courts applying C.P.L.R. 901(b) have repeatedly rejected TCPA claims brought as putative class actions. *See, e.g.*, *J. A. Weitzman, Inc. v. Lerner, Cumbo & Assocs., Inc.*, 46 A.D.3d 755, 756 (2d Dep't 2007); *Leyse*, 22 A.D.3d at 426; *Rudgayzer & Gratt*, 22 A.D.3d at 149; *Weber*, 21 A.D.3d at 411. If federal courts hearing those same cases in diversity permitted them to proceed as class actions, this result would create a predictable and foreseeable outcome-determinative difference that would strongly encourage forum shopping and create inequitable administration of the laws — the two problems *Erie* sought to avoid. *See Hanna*, 380 U.S. at 468. For these reasons, we hold that federal courts should apply C.P.L.R. 901(b) to putative New York class actions brought for alleged TCPA violations. This will prevent the unfairness that ensues when the "character or result of a litigation" differs materially simply because a plaintiff sues in federal, as opposed to state, court. *Id.* at 467.

A second, independent reason reinforces this conclusion. The private right of action created by the TCPA allows a person or entity to, "if *otherwise permitted by the laws or rules of*

10

*court of a State*, bring in an appropriate court of that State," an action for a violation of the TCPA. *See* 47 U.S.C.§ 227(b)(3) (emphasis added). This statutory language is unambiguous — a claim under the TCPA cannot be brought if not permitted by state law. "In determining the proper interpretation of a statute, this court will look first to the plain language of a statute and interpret it by its ordinary, common meaning. If the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words." *Tyler v. Douglas*, 280 F.3d 116, 122 (2d Cir. 2001) (internal citations, quotation marks, and alteration omitted). This provision constitutes an express limitation on the TCPA which federal courts are required to respect.

**CONCLUSION**

The judgment of the District Court is affirmed.

CALABRESI, *J.*, concurring:

Although I agree with the majority's judgment in this case, I write separately because I join only in the second interpretation identified by the majority for its conclusion. (Ante at 10-11.)

Whatever their merits, our cases make clear that, although federal courts may not entertain suits under the TCPA based on federal question jurisdiction, *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.*, 156 F.3d 432, 435 (2d Cir. 1998), federal court jurisdiction exists where there are other bases for jurisdiction. *See Gottlieb v. Carnival Corp.*, 436 F.3d 335, 342-43 (2d Cir. 2006). *But see Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450 (7th Cir. 2005) (criticizing our decision in *Foxhall* and contending that "if state jurisdiction really is 'exclusive,' then it knocks out [28 U.S.C.] § 1332 as well as [28 U.S.C.] § 1331"). Like diversity jurisdiction, which we addressed in *Gottlieb*, other forms of party-identity-based federal court jurisdiction ought also to give rise to federal court jurisdiction over TCPA claims. Thus, suits involving as parties, *inter alia*, the United States (28 U.S.C. §§ 1345, 1346 (suits, respectively, by and against the United States)), diplomats (28 U.S.C. § 1351 (suits against consuls, vice consuls, and members of diplomatic missions)), or corporations organized under federal law (28 U.S.C. § 1349 (suits by and against such corporations)), should be governed by *Gottlieb*, not *Foxhall*.

Here, Appellant Bonime brings suit under diversity jurisdiction. But his is not a traditional diversity action. Rather, Bonime relies on CAFA's diversity-jurisdiction provision, *see* 28 U.S.C. § 1332(d)(2)(A), and attempts to bring a class action suit under CAFA that, under New York law, he cannot bring in New York state court. *See* C.P.L.R. 901(b). The question

before this Court, then, is whether a party may bring a TCPA claim in federal court where the same claim would be barred in state court.

The TCPA's right of action is created by federal law, and so federal substantive law must apply. *See Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 541 n.1 (2d Cir. 1956) ("[D]espite repeated statements implying the contrary, it is the source of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law."); *accord Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 n.4 (2d Cir. 2006). As such, Bonime is correct that *Erie* does not apply to his claim. *See Felder v. Casey*, 487 U.S. 131, 151 (1988) (describing the *Erie* principle as providing that "when a federal court exercises diversity or pendent jurisdiction over *state-law claims*, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court") (internal quotation marks omitted) (emphasis added). The majority in a sense agrees, writing, "It is correct that the Supreme Court's *Erie* doctrine does not apply directly to the TCPA because it is a federal law. . . . The scheme of state and federal judicial integration and cooperation created by *Erie* does not implicate the TCPA because it is a federal law and *Erie* was directed to state-law claims." (Ante at 9.)

I believe that the majority missteps, however, in concluding that the *Erie* doctrine applies anyway, if only indirectly, as a matter of "Congressional instruction." (Ante at 9.) I do not think we need to turn to *Erie* at all, and that doing so confuses matters. Instead, I would focus our attention to the language of the statute and what it says about this *federal* cause of action. The TCPA, in relevant part, describes the private right of action it created as follows: a person or

entity "may, *if otherwise permitted by the laws or rules of court of a State*," bring "an action." 47 U.S.C. § 227(b)(3) (emphasis added).

Like *Gottlieb*, this case presents a question of statutory construction. And statutory construction begins with statutory text and its plain meaning. *See Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 143 (2d Cir. 2002). Under well-established rules of interpretation, the language of the "if otherwise permitted" clause modifies and limits the word "may." *See, e.g.*, *United States v. Kerley*, 416 F.3d 176, 180 (2d Cir. 2005) (following the "well-established rule" that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows") (internal quotation marks and citation omitted). A state law that bars suit in state court, like C.P.L.R. 901(b), thus effectively eliminates the cause of action created under the TCPA because it eliminates the "may" and the rest of the phrase that follows ("bring . . . an action"). Federal law (the TCPA's cause of action) directs courts to look to "the laws" and "rules of court" of a state. Thus, when a state refuses to recognize a cause of action, there remains no cause of action to which any grant of federal court jurisdiction could attach. It follows that Bonime's suit must fail because Bonime lacks a cause of action on which to bring suit.

This result derives inevitably from our cases, although it need not flow from every possible interpretation of the TCPA. The Seventh Circuit, for instance, has held that federal courts may exercise federal question jurisdiction over TCPA suits. *Brill*, 427 F.3d at 451. In so doing, that court has read the language of section 227(b)(3) regarding state law and state courts as merely creating an alternative forum, rather than as foreclosing jurisdiction or relief in federal court. Indeed, the Seventh Circuit opined in *Brill* that its reading was required because

14

"otherwise where would victims go if a state elected not to entertain these suits?" *Id.* On the Seventh Circuit's interpretation of the TCPA's private right of action, Appellant's suit might well be permissible.

This Court, contrary to the Seventh Circuit, has rejected attempts to interpret section 227(b)(3)'s seemingly state-law centered language as only creating an alternative forum for a cause of action that was—on the Seventh Circuit's view—federally meant to be created independently and viable independently, regardless of a state's wishes. Instead, our decision in *Foxhall*, reaffirmed in *Gottlieb*, interpreted the statute's state-centered language as having substantive content—content that deprived us of federal question jurisdiction. *Foxhall*, 156 F.3d at 435. Having given the "if otherwise permitted" clause such content, we cannot now ignore its instruction in construing the TCPA. We, therefore, must hold that the TCPA's cause of action does not survive state law determinations that bar it.

*Erie* is not necessary or helpful to the resolution of this case. I therefore join in the judgment of the majority and its second ground of decision, but, most respectfully, not its reasoning regarding the indirect application of *Erie*.