Giovanniello v. ALM Media, LLC

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

——————

August Term, 2012

(Argued: May 7, 2013      Decided: August 8, 2013)

Docket No. 10-3854-cv

———————————————

Earle Giovanniello,

*Plaintiff-Appellant*,

— v.—

ALM Media, LLC,

*Defendant-Appellee.*

———————————————

Before: RAGGI, LOHIER, AND WALLACE,* *Circuit Judges*:

———————————————

Appeal from a September 8, 2010 judgment of dismissal of the United States District Court for the District of Connecticut (Arterton, *J.*). We hold that the four-year federal statute of limitations in 28 U.S.C. § 1658(a) applies to Giovanniello's claim. Further, we join our sister circuits in holding that *American Pipe* tolling does not extend beyond the denial of class status in a prior action. As a result, Appellant's subsequent claim is time barred. **AFFIRMED.**

———————————————

TODD C. BANK, Kew Gardens, NY, *for Plaintiff-Appellant.*

CHAD R. BOWMAN (Elizabeth C. Koch, *on the brief*), Levine Sullivan Koch & Schulz, L.L.P., Washington, D.C., *for Defendant-Appellee.*

———————————————

---

*Judge J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

J. CLIFFORD WALLACE, *Circuit Judge*:

This case returns to us on remand from the Supreme Court. Appellant Earle Giovanniello sought review of our decision in *Giovanniello v. ALM Media, LLC*, 660 F.3d 587 (2d Cir. 2011), arguing that we erred in concluding that Connecticut state law dictated the statute of limitations that applies to a claim brought in federal court under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA). The Supreme Court granted Giovanniello's petition for certiorari, vacated our previous judgment, and remanded the case for further consideration in light of *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012). *Giovanniello v. ALM Media, LLC*, 133 S. Ct. 159 (2012).

We conclude, in light of *Mims*, that federal law supplies the appropriate statute of limitations—here, four years, *see* 28 U.S.C. § 1658(a)—rather than Connecticut state law. This holding, however, does not save Giovanniello's claim because we join every other circuit court to have addressed the issue and conclude that the tolling rule announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), extends only through the denial of class status in the first instance by the district court. As Giovanniello acknowledges, cutting off tolling at this point requires a conclusion that his September 8, 2009 filing was untimely. We therefore affirm the district court's judgment of dismissal.

I.

This case is the fourth attempt by Giovanniello to commence and prosecute a putative class action under the TCPA, 47 U.S.C.§ 227(b)(1)(c), for an unsolicited fax advertisement that he allegedly received on January 28, 2004. We review briefly that history.

A.

2

Giovanniello alleges that on January 28, 2004, ALM Media, LLC (ALM) sent him an unsolicited fax advertisement. Giovanniello contends that he is merely one of at least 10,000 individuals who likewise received unsolicited fax advertisements sent by ALM. As a result, Giovanniello filed, on April 23, 2004, a putative class action complaint in Connecticut state court. On August 30, 2004, however, Giovanniello voluntarily withdrew his complaint. Less than a month later, on September 20, 2004, Giovanniello filed another complaint in Connecticut state court against ALM. Once again, Giovanniello voluntarily dismissed that complaint on June 27, 2005.

B.

On March 8, 2007, Giovanniello filed a third action against ALM under the TCPA in the Southern District of New York. On August 6, 2007, the district court dismissed Giovanniello's putative class action complaint for lack of subject-matter jurisdiction, concluding that the TCPA, though permitting diversity jurisdiction in federal court, looked to applicable state law to determine the availability of a class action in a particular case. *Giovanniello v. New York Law Publ'g. Co.*, No. 07 Civ. 1990, 2007 WL 2244321, at *4 (S.D.N.Y. Aug. 6, 2007). Because New York law did not permit a class action "predicated on statutory damages," the district court concluded that the court lacked subject-matter jurisdiction to hear Giovanniello's putative class action. *Id.*, *applying* N.Y. C.P.L.R. § 901(b). The district court concluded that because Giovanniello could not maintain a class action, the maximum damages he could potentially receive as an individual claimant ($1500) fell short of the minimum amount required for diversity jurisdiction under 28 U.S.C. § 1332(a). *Id.*

Following dismissal, Giovanniello moved for reconsideration. The district court denied that motion. *Giovanniello v. New York Law Publ'g Co.*, No. 07 Civ. 1990, 2007 WL 4320757 (S.D.N.Y. Dec. 11, 2007). On December 19, 2007, Giovanniello appealed from the judgment of dismissal and denial of reconsideration. The parties stipulated to a stay of the appeal pending resolution of another appeal involving a similar issue. After this court resolved the related appeal and issued a show cause

3

order to Giovanniello, he failed to respond. We accordingly dismissed Giovanniello's appeal on February 9, 2009.

## C.

On September 8, 2009, Giovanniello filed his fourth putative class action under the TCPA (the instant case) in United States District Court for the District of Connecticut. A year later, the district court concluded that, even assuming that the federal four-year statute of limitations applied, *see* 28 U.S.C. § 1658(a), and that the statute of limitations was tolled during the pendency of Giovanniello's state suits through voluntary dismissal and during the pendency of Giovanniello's Southern District of New York action through dismissal, Giovanniello's filing was untimely. *Giovanniello v. ALM Media, LLC*, No. 3:09CV1409, 2010 WL 3528649, at *6 (D. Conn. Sept. 3, 2010). Giovanniello appealed.

On appeal, we held that the TCPA's "otherwise permitted by state law" provision required us to apply Connecticut state law, including any applicable statute of limitations, in determining whether Giovanniello's claim was time barred. *Giovanniello*, 660 F.3d at 593. We thus concluded that because Connecticut state law parallel to the TCPA, *see* Conn. Gen. Stat. § 52-570c(d), only provided for a two-year limitations period, regardless of whether tolling applied during the pendency of Giovanniello's prior actions, his fourth filing was necessarily untimely. 660 F.3d at 597. Subsequently, the Supreme Court granted Giovanniello's petition for certiorari, vacated our previous disposition, and remanded for further consideration consistent with its decision in *Mims*. *Giovanniello*, 133 S. Ct. 159. Thus, we must again address whether Giovanniello's September 8, 2009 claim was timely.

Giovanniello contends that *Mims* supports his argument that the federal catch-all statute of limitations applies, not Connecticut's two-year limitations period. Under the federal limitations period, Giovanniello contends that he had 1461 days to file his claim from the date he allegedly

4

received the unlawful fax. Between January 24, 2004 (the day on which he allegedly received the unlawful fax), and September 8, 2009 (the day he filed the instant action), 2051 days passed. Giovanniello contends, however, that the pendency of his previous actions in their respective courts, through dismissal in each case, tolled the limitations period a total of 560 days. While recognizing that the resulting total (1491 days) is 30 days short of the total needed to make the filing in this case timely, Giovanniello asks us to conclude that the applicable limitations period was also tolled during either or both the pendency of his motion for reconsideration of the dismissal of his third filing in the Southern District of New York or his appeal from the judgment of dismissal in that same case. Because the pendency of reconsideration and appeal were each longer than 30 days, Giovanniello contends that if we extend tolling through either period, his September 8, 2009 class action was timely filed.

II.

We review de novo a district court's judgment of dismissal. *City of Pontiac Gen. Emps'. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). "We are free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *United States v. Yousef*, 327 F.3d 56, 156 (2d Cir. 2003) (internal quotation marks omitted).

While we must determine whether the district court was correct that *American Pipe* tolling does not extend beyond denial of class status, we must first reach the predicate question of whether a federal or state limitations period applies here. *See generally Board of Regents v. Tomanio*, 446 U.S. 478, 485–86 (1980) (indicating that the source of the applicable statute of limitations supplies the applicable "rules of tolling"); *accord Pearl v. City of Long Beach*, 296 F.3d 76, 80–81 (2d Cir. 2003).

A.

28 U.S.C. § 1658(a) provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later

5

than 4 years after the cause of action accrues." *See also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (explaining that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment").

Congress enacted the TCPA on December 20, 1991, over a year from the effective date of section 1658(a). *See* 47 U.S.C. § 227. The TCPA does not contain a statute of limitations. That statute provides, however, that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring [an action] in an appropriate court of that State." *Id.* § 227(b)(3).

We previously held that section 227(b)(3)'s "if otherwise permitted" language constituted an exception to the generally applicable catch-all limitations period in section 1658(a). Indeed, in our prior decision, we concluded that section 227(b)(3) is "'unambiguous' in placing an express limitation on the TCPA [that] federal courts are required to respect': a TCPA claim 'cannot be brought if not permitted by state law.'" *Giovanniello*, 660 F.3d at 592, *quoting Bonime v. Avaya, Inc.*, 547 F.3d 497, 502 (2d Cir. 2008). We reasoned that the "if otherwise permitted" language indicates Congress's intent that states have a "'fair measure of control'" over TCPA claims. *Id.* at 593, *quoting Holster v. Gatco, Inc.*, 618 F.3d 214, 218 (2d Cir. 2010). "Such control," we explained, "encompasses not only the general authority to recognize particular causes of action, but also the specific authority to determine the time period within which such actions will be recognized." *Id.* Thus, we concluded that as a matter of statutory interpretation, the relevant Connecticut (and not the federal catch-all) statute of limitations applied to Giovanniello's claim. *Id.* Under Connecticut's statute, we determined, Giovanniello's claim was clearly time barred. *Id.* at 597.

We must address now whether the Supreme Court's decision in *Mims* requires us to reach a different outcome as to the applicable statute of limitations.

6

In *Mims*, the Supreme Court resolved a circuit split as to "whether Congress' provision for private actions [in section 227(b)(3)] to enforce the TCPA renders state courts the *exclusive* arbiters of such actions." 132 S. Ct. at 744. As with other circuits, we had previously determined, given the state-law centered language of section 227(b)(3), that district courts lack federal-question jurisdiction over private TCPA claims, *see Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.*, 156 F.3d 432 (2d Cir. 1998), yet we permitted district courts to consider TCPA claims when sitting in diversity, *see Gottlieb v. Carnival Corp.*, 436 F.3d 335 (2d Cir. 2006).

The Court in *Mims* abrogated our holding in *Foxhall*, concluding unanimously that despite section 227(b)(3)'s state-oriented language, federal and state courts have concurrent jurisdiction over private TCPA claims. 132 S. Ct. at 745. The Court explained that "[b]eyond doubt, the TCPA is a federal law that both creates the claim [the plaintiff] has brought and supplies the substantive rules that will govern the case." *Id.* at 744–45. The Court further explained that "when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331 . . . . unless Congress divests federal courts of their § 1331 adjudicative authority." *Id.* 748–49. After examining section 227(b)(3), the Court held that there was "no convincing reason to read into the TCPA's permissive grant of jurisdiction to state courts any barrier to the U.S. district courts' exercise of the general federal-question jurisdiction they have possessed since 1875." *Id.* at 745. Thus, the Court held that federal courts have federal-question jurisdiction over TCPA claims. *Id.*

Although the Court did not directly address the statute of limitations question we face here, *Mims* fundamentally shifts the way that we view section 227(b)(3)'s "if otherwise permitted" language and requires us to determine whether the district court was correct to apply section 1658(a)'s four-year catch-all provision.

To begin, *Mims*'s holding casts doubt on controlling precedent essential to our prior decision that section 227(b)(3)'s language "unambiguously" acts as an "express limitation" on district courts, requiring them to apply state law when adjudicating TCPA claims. *See European Cmty. v. RJR Nabisco, Inc.*, 424 F.3d 175, 179 (2d Cir. 2005) (recognizing that we are bound by our prior decisions except "where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent") (internal quotation marks omitted). In our now-vacated decision, we held that our previous cases interpreting section 227(b)(3) compelled us to conclude that we should "use[] 'state law *to define* the federal cause of action,'" which included application of the relevant state statute of limitations. *Giovanniello*, 660 F.3d at 593, *quoting Holster*, 618 F.3d at 216. Those cases upon which we relied for the proposition that section 227(b)(3) imposes substantive limitations, derived from state law, on TCPA claims are based, at least in part, on our jurisdictional decision in *Foxhall*. As a result, although *Mims* does not address the precise statute of limitations issue we are faced with here, its holding impacts our case law interpreting section 227(b)(3).

Our discussion of section 227(b)(3) in *Bonime* demonstrates how our interpretation of section 227(b)(3)'s "if otherwise permitted" language relates to our jurisdictional decision in *Foxhall*. *Bonime* held that because section 227(b)(3)'s language constitutes an "express limitation on the TCPA," New York's class action statute, not Federal Rule of Civil Procedure 23, governed the viability of a class action claim brought in federal court under the court's diversity jurisdiction. 547 F.3d at 499–502. *Bonime* had two rationales, only one of which survived at the time we filed our previous opinion. First, *Bonime* held that because "the TCPA functionally operates as state law, [we had to] apply the *Erie* doctrine to the TCPA" just as we would to substantive state law and therefore we looked to New York's class procedures. *Id.* at 501. This line of reasoning was expressly overruled by the Supreme Court, as we pointed out in *Holster*, 618 F.3d at 217 (explaining that "to the extent that [*Bonime*] was based on treating the TCPA 'as if it were a state law,' [the Supreme Court's decision in]

*Shady Grove* [*Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010)] abrogates [that] holding").

Second, and independently, *Bonime* explained that as a matter of statutory construction, the language of the TCPA ("if otherwise permitted by the laws or rules of court of a State") "unambiguous[ly]" created an "express limitation on the TCPA [that] federal courts are required to respect." 547 F.3d at 502. In other words, *Bonime* concluded that the statute, by its terms, made a TCPA claim contingent on applicable state law. *Id.*

Judge Calabresi, in a concurring opinion, explained the majority's second rationale, expressly connecting jurisdiction and the conclusion that the TCPA, as a matter of statutory interpretation, acts as a substantive limitation on TCPA claims in federal court. Judge Calabresi explained that the TCPA "directs courts to look to 'the laws' and 'rules of court' of a state." *Id.* at 503 (Calabresi, J., concurring). Accordingly, he explained, if a state "refuses to recognize a cause of action [via its class action rules, for example], there remains [nothing] to which any grant of federal court jurisdiction could attach." *Id.* This conclusion "derive[d] inevitably," Judge Calabresi explained, from the court's prior decisions, such as *Foxhall*, in which the court determined that state courts had exclusive jurisdiction over TCPA claims. *Id.*

Judge Calabresi explained, however, that in a different jurisdictional context, section 227(b)(3) could have a decidedly different meaning. *Id.* Indeed, Judge Calabresi identified that contrary to this court, the Seventh Circuit had interpreted the TCPA as conferring federal-question jurisdiction on district courts. *Id.*, *citing Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (7th Cir. 2005). Under the Seventh Circuit's approach, Judge Calabresi said, the TCPA's "if otherwise permitted" language has been read "as merely creating an alternative forum [in which to bring TCPA claims], rather than as foreclosing jurisdiction or relief in federal court." *Id.* In other words, in the Seventh Circuit, where federal-question jurisdiction exists, section 227(b)(3) is viewed as

congressional permission empowering states to refuse to entertain TCPA claims. *Id.*; *see also Brill*, 427 F.3d at 451.

Judge Calabresi then stated that such an interpretation was not appropriate in *Bonime* because the court in *Foxhall*, which was reaffirmed in *Gottlieb*, 436 F.3d at 336, held that section 227(b)(3) does not permit federal-question jurisdiction, and therefore, cannot be viewed as merely providing an alternative forum—i.e., state court—in which plaintiffs may bring TCPA claims. 547 F.3d at 504. Instead, Judge Calabresi believed that the Second Circuit's case law required the court to conclude that section 227(b)(3)'s "state-centered language" had to be interpreted "as having substantive content—content that deprived us of federal question jurisdiction." *Id.* Thus, Judge Calabresi explained, because prior decisions had given "the 'if otherwise permitted' clause such content, [the court could not] ignore its instruction in construing the TCPA." *Id.* As a result, Judge Calabresi concluded that the court had to hold that a TCPA claim does not "survive state law determinations that bar it." *Id.*

In *Holster*, we reaffirmed the second rationale of *Bonime* and adopted expressly the reasoning of Judge Calabresi's concurrence. 618 F.3d at 217. Thus, we determined that we had to read the "if otherwise permitted" language "as a delegation by Congress to the states of considerable power to determine which causes of action lie under the TCPA." 618 F.3d at 217. We extended *Holster*'s teaching in our prior decision, determining that we had to incorporate Connecticut's statute of limitations to bar Giovanniello's claims. 660 F.3d at 593.

As described above, *Mims* has now changed the jurisdictional landscape for TCPA claims. Under a regime in which jurisdiction over TCPA claims rested exclusively in state courts or federal courts in diversity, section 227(b)(3)'s state-centric language suggests that the TCPA uses "state law to define the federal cause of action" and therefore constitutes an express limitation on all TCPA claims. *Holster*, 618 F.3d at 216. We relied on this interpretation of section 227(b)(3) in our prior

10

decision in this case, holding that state statutes of limitations define TCPA claims in state courts. *Giovanniello*, 660 F.3d at 592–93. *Mims* upends our previous approach, however, recognizing that despite section 227(b)(3)'s state-oriented language, federal courts have federal-question jurisdiction over TCPA claims. *Mims* further recognizes that the TCPA "creates [the plaintiff's] claim . . . and supplies the substantive rules that will govern the case." 132 S. Ct. at 745. Where jurisdiction is not exclusive to state courts (or federal courts applying the TCPA as state law in diversity) and federal law provides the "substantive rules" of a TCPA claim in federal court, *Mims*'s holding thus suggests that section 227(b)(3)'s state-oriented language applies only to TCPA claims in state court, not the universe of TCPA claims.

We therefore hold that *Mims* expressly abrogates *Foxhall* and undermines the holdings of *Gottlieb*, *Bonime*, and *Holster* insofar as those cases rest their interpretation of section 227(b)(3) on the jurisdictional approach that existed prior to *Mims*. Thus, although ALM is correct that *Mims* does not directly control the statute of limitations question we face here, because *Mims*'s holding casts doubt on cases upon which we previously relied, we must reexamine the meaning of section 227(b)(3). In particular, we must determine whether, as Judge Calabresi suggested in his concurrence, section 227(b)(3) merely creates an "alternative forum" for TCPA claims given the jurisdictional shift in *Mims*. *See Bonime*, 547 F.3d at 503–04.

### III.

Beyond its jurisdictional holding, *Mims*'s reasoning likewise undercuts a key basis of our prior interpretation of section 227(b)(3). Our previous decisions interpreting the "if otherwise permitted" clause relied heavily on the rationale that the TCPA's purpose was to enable states to expand their jurisdictional reach to get at out-of-state offenders. *See, e.g.*, *Holster*, 618 F.3d at 217 ("After lauding states' efforts to combat telemarketing abuses, the TCPA's congressional findings suggest that a key issue the statute aimed to resolve was the inability of state laws to deal with the

11

problem's interstate nature"); *Bonime*, 547 F.3d at 499, *quoting Gottlieb*, 436 F.3d at 342 (explaining that "[t]he legislative history of the TCPA 'indicates that Congress intended the TCPA to provide interstitial law preventing evasion of state law by calling across state lines'" and thus, it "'sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps'"). This view of the TCPA persuaded us that the "if otherwise permitted" clause required us to "define what causes of action can lie under the TCPA" by reference to state law. *Holster*, 618 F.3d at 217.

The Court in *Mims* expressly rejected the idea that "Congress sought only to fill a gap in the States' enforcement capabilities" in enacting the TCPA. 132 S. Ct. at 751. Indeed, the Court identified the significant "*federal* interest in regulating telemarketing to protec[t] the privacy of individuals while permit[ting] legitimate [commercial] practices." *Id.* (emphasis added) (internal quotation marks omitted). The Court explained that had Congress's purpose merely been to fill an interstitial gap in states' enforcement, Congress "could have passed a statute providing that out-of-state telemarketing calls directed into a State would be subject to the laws of the receiving State." *Id.* Instead, in contrast to our prior decision in this case in which we held that Congress had "effectively disclaimed any interest in uniform treatment of TCPA claims among the states," 660 F.3d at 596, the Court in *Mims* explained that in passing the TCPA, Congress "enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime administered by a federal agency." 132 S. Ct. at 751. The Court further explained that given the significant "federal interest in regulating telemarketing, . . . . Congress's design would be less well served if consumers had to rely on 'the laws or rules of court of a State,' or the accident of diversity jurisdiction, to gain redress for TCPA violations." *Id.*

*Mims* thus suggests that to vindicate the significant federal interest reflected in the TCPA and to ensure uniformity, TCPA claims in federal court are not subject to the vagaries of state law. In

12

terms of the applicable statute of limitations, *Mims* suggests that Congress did not intend the "if otherwise permitted" language to direct federal courts to divine and apply the relevant state limitations periods.

Not only does *Mims* undermine our prior interpretation of section 227(b)(3), it also endorses an alternative interpretation of the "if otherwise permitted" clause. In response to the argument that Congress intended to vest jurisdiction over TCPA claims exclusively in state courts given section 227(b)(3)'s peculiar state-law oriented language, the Court explained that "by providing that private actions may be brought in state court 'if otherwise permitted by the laws or rules of court of [the] State,' Congress arguably gave States leeway they would otherwise lack to 'decide for [themselves] whether to entertain claims under the [TCPA].'" *Id.* at 751 (citation omitted), *quoting Brill*, 427 F.3d at 451.

*Mims* thus suggests that in enacting the TCPA, Congress merely enabled states to decide whether and how to spend their resources on TCPA enforcement. Such permission from Congress was necessary to avoid Supremacy Clause concerns. *See Mims*, 132 S. Ct. at 751 n.12 (explaining that "[w]ithout the 'if otherwise permitted' language, there is little doubt that state courts would be obliged to hear TCPA claims" because of the Supremacy Clause) (citation omitted). Read in this way, section 227(b)(3)'s "if otherwise permitted" language plainly has limited effect and cannot be construed as requiring us to apply state limitations periods to TCPA claims in federal court.

We rejected this interpretation in our prior decision, indicating that our precedent foreclosed such an interpretation. 660 F.3d at 593, *citing Holster*, 618 F.3d at 216, and *Bonime*, 547 F.3d at 504. As explained above, *Mims* has significantly undercut the reasoning of those decisions. Accordingly, reading section 227(b)(3) as merely providing an alternative forum becomes a natural reading of the clause. *See Bonime*, 547 F.3d at 503–04 (Calabresi, J., concurring).

13

This alternative interpretation, that section 227(b)(3) merely permits states to open or close their courthouse doors to TCPA claims, is consistent with the text of the statute. By its terms, section 227(b)(3) permits private actions in state court: "a person or entity may . . . bring [an action] in an appropriate [state court]." The availability of that state court action is modified by the phrase "if otherwise permitted by the laws or rules of court of a State." Section 227(b)(3) does not mention expressly any limitation on TCPA claims in federal court. Indeed, given the significant damage *Mims* does to our prior case law interpreting section 227(b)(3), we would now have to interpret the "if otherwise permitted" language extremely broadly to conclude that it requires us to apply state law to define a TCPA claim in federal court.

In sum, *Mims*'s holding that federal-question jurisdiction exists for TCPA claims fundamentally alters how we view section 227(b)(3). Our prior case law interpreting section 227(b)(3)'s "if otherwise permitted" clause as having "substantive content," that is, content that not only worked to deprive federal courts of jurisdiction but also as a delegation of authority to state courts to set the terms of TCPA claims, *see Bonime*, 547 F.3d at 502–504 (Calabresi, J., concurring), no longer holds true. Further, *Mims* undercuts our reasoning as to the purpose of the TCPA. Indeed, *Mims* emphasizes that Congress had a strong federal interest in uniform standards for TCPA claims in federal court. Moreover, *Mims* offers an alternative interpretation of the "if otherwise permitted" language. That interpretation is consistent with the plain language of section 227(b)(3), and is consistent with our sister circuits who have always permitted district courts to hear TCPA claims under their federal-question jurisdiction. *See Brill*, 427 F.3d at 451.

The Court in *Mims* emphasized that it would not hold that Congress had vested jurisdiction in state courts alone merely from the "if otherwise permitted" language, concluding that it did not "expressly or by fair implication, exclude[] federal-court adjudication." 132 S. Ct. at 749. The Court

14

made clear that "Congress knew full well how to grant exclusive jurisdiction with mandatory language." *Id.* at 750.

The same is true here: Congress knew full well how to displace section 1658(a)'s catch-all limitations period with clear language. Based on *Mims*, for the reasons explained above, we conclude that Congress did not clearly intend to displace section 1658(a) when it enacted the TCPA, particularly section 227(b)(3). Given the liberal interpretation we are required to give section 1658(a), *see Jones*, 541 U.S. at 382, we conclude that section 227(b)(3)'s "if otherwise permitted" language does not operate as an exception to the generally applicable federal catch-all limitations period in 28 U.S.C. § 1658(a). That statute's four-year limitations period therefore governs Giovanniello's September 8, 2009 filing in Connecticut District Court.

IV.

Giovanniello's September 8, 2009 action was filed more than four-years after he allegedly received the unlawful fax on January 28, 2004. Giovanniello contends that applicable tolling rules extended the federal limitations period, making his September 8, 2009 filing timely. We did not reach the tolling question in our prior decision because we concluded that Connecticut's two-year limitations period applied, rendering Giovanniello's claim untimely even under broad tolling principles. 660 F.3d at 589. Having determined that the federal catch-all limitations period applies to Giovanniello's claim, we now apply federal tolling rules from *American Pipe* and its progeny.

A.

Under the *American Pipe* tolling doctrine, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554.

We have not had occasion to determine the scope of *American Pipe* tolling. As we identified previously, however, each of our sister circuits to have discussed this issue has determined that

15

*American Pipe* tolling ends upon denial of class certification. *See Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 519 (5th Cir. 2008); *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211 (4th Cir. 2006); *Yang v. Odom*, 392 F.3d 97, 102 (3d Cir. 2004); *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355–56 (Fed. Cir. 2000); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1391 (11th Cir. 1998) (en banc); *Andrews v. Orr*, 851 F.2d 146, 149–50 (6th Cir. 1988); *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir. 1982). We now take this opportunity to join our sister circuits and hold that *American Pipe* tolling does not extend beyond the denial of class status. Class status was denied in this case when the Southern District of New York determined that a class action was unavailable under New York law. Individual class members were required at that time to take action to preserve their rights or face the possibility that their action could become time barred.

Such a rule is consistent with—if not compelled by—the decisions of the Supreme Court and this court. The Supreme Court in *American Pipe* held that "the commencement of the class action in th[e] case suspended the running of the limitations period *only during the pendency of the motion to strip the suit of its class action character.*" 414 U.S. at 561 (emphasis added). Further, the Court in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), held: "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class *until class certification is denied.* At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* at 354 (emphasis added). Similarly, we have explained that

> [b]ecause members of the asserted class are treated for limitations purposes as having instituted their own actions, *at least so long as they continue to be members of the class*, the limitations period does not run against them during that time. Once they cease to be members of the class—for instance, when they opt out or when the certification decision excludes them—the limitation period begins to run again on their claims.

*In re Worldcom Secs. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) (emphasis added); *see In re Agent Orange Liability Litigation*, 818 F.2d 210, 214 (2d Cir. 1987) (explaining that "[t]he intent of the *American Pipe*

rule is to preserve the individual right to sue of the members of a proposed class *until the issue of class certification has been decided*") (emphasis added). Although none of these cases directly addressed the precise scope of *American Pipe* tolling, their language does not lend itself to a conclusion that tolling extends beyond the initial determination of class status in the district court.

The issue of class status was decided by the Southern District of New York here when it applied then-applicable New York state law, determining that Giovanniello could not maintain a class action and, as a result, fell short of the amount in controversy requirements of 28 U.S.C. § 1332.[1] Although the possibility of reconsideration or reversal on appeal existed, Giovanniello is incorrect that this rendered the district court's decision "provisional." Indeed, we agree with the district court that "[a]fter a district court's determination of whether an action may be maintained as a class action, the class is no longer putative: having been subjected to a legal decision, the class is either extant or not." *Giovanniello*, 2010 WL 3528649, at *5. For this very reason, the Court in *Crown, Cork* recognized that once class status is denied, "class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork*, 462 U.S. at 354. If the Court had contemplated that tolling continued through the pendency of reconsideration or through appeal, there would be no need for class members to take action to protect their rights as the Court in *Crown, Cork* explained. Thus, once Giovanniello's attempt to secure class status failed, the statute of limitations began to run again.

---

[1] In determining that the Southern District of New York decided the putative class status once it dismissed Giovanniello's action, we are not necessarily deciding whether this means that Giovanniello's September 8, 2009 filing in the District of Connecticut, which also sought class status, constituted a serial class action filing contrary to the rule announced in *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987). Even if we determined that Giovanniello's Connecticut filing is foreclosed by *Korwek*, however, we would be required to address the tolling issue because post-*Mims*, Giovanniello could have maintained the action under the district court's federal-question jurisdiction as an individual claim. Indeed, Giovanniello's Second Amended Complaint is styled as an individual and class action and invokes federal-question jurisdiction under 28 U.S.C. § 1331 in addition to diversity jurisdiction under 28 U.S.C. § 1332. Thus, either way, we would have to reach the tolling issue, and the tolling issue disposes of both Giovanniello's putative class action *and* his individual claim.

17

This narrow interpretation is consistent with the reasoning underlying *American Pipe* tolling. The *American Pipe* rule is based on the idea that under Rule 23 of the Federal Rules of Civil Procedure, potential class members are protected by the commencement of a putative class action, even if they are unaware of the action. *See American Pipe*, 414 U.S. at 550–52. Because individual class members, and even unaware class members, may "rely on the existence of the [putative class action] suit to protect their rights," they need not file an action or move to intervene during the pendency of class certification. *Crown, Cork*, 462 U.S. at 350. To hold otherwise, the Court has indicated, would result in a "multiplicity of [filings]" by potential class members seeking to preserve their rights even while the class certification proceeds, "precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Id.* at 351.

This objectively reasonable reliance rationale breaks down once the district court disallows class status. The Eleventh Circuit has explained that "[w]hen the district court denies class [status], the named plaintiffs no longer have a duty to advance the interests of the excluded putative class members." *Armstrong*, 138 F.3d at 1381. After class status is denied, the named plaintiff thus has no responsibility to pursue any additional avenue to maintain the action as a class action under Rule 23, such as appeal or reconsideration. *See id.* As a result, unlike during the pendency of class certification where Rule 23 requires that named plaintiffs function as representatives of potential class members, once class status has been disallowed, Rule 23 no longer operates to protect non-named plaintiffs.

Further, even where the plaintiffs seek reconsideration or appeal, ostensibly representing the rights of non-named plaintiffs, reliance is not objectively reasonable. As the court in *Armstrong* identified, reconsideration and appeal rarely result in a reversal of the district court decision. *Id.* at 1381 & n.12; *see also* Richard D. Freer, Interlocutory Review of Class Action Certification Decisions: A Preliminary Empirical Study of Federal and State Experience, 35 W. St. U. L. Rev. 13, 20 (2007) (concluding that between 1997 and late 2007, fewer than three district court denials of class

18

certification were reversed by the Second Circuit on interlocutory appeal). Thus, we conclude that the remote possibility of reversal of the district court's denial of class status does not provide a basis for objectively reasonable reliance by individual plaintiffs.

Giovanniello contends that Rule 23(f), which permits interlocutory appeal of class certification decisions, changes the nature of appeals from the denial of class status and thereby undermines any reliance on the *Armstrong* line of cases.

We conclude that Rule 23(f) does not alter our analysis. To begin, Giovanniello's appeal from the Southern District of New York's dismissal was not an interlocutory appeal under Rule 23(f). As explained, the district court dismissed Giovanniello's putative class action after determining that class status was unavailable under New York law. This gave Giovanniello an appeal *as of right* to this court. Giovanniello's argument as to Rule 23(f) is therefore relevant only as it relates to the general argument that the rule requires departure from our sister circuits. We conclude that the rule does not affect our decision as to the scope of *American Pipe* tolling.

Although *Armstrong*, the lead case on this issue, was decided prior to the enactment of Rule 23(f), a number of post-Rule 23(f) cases have held that tolling does not extend beyond a district court decision denying class status even after the promulgations of Rule 23(f). *See, e.g.*, *Taylor*, 554 F.3d at 519; *Bridges*, 441 F.3d at 212; *Yang*, 392 F.3d at 102; *Culver*, 277 F.3d at 914; *Stone Container Corp.*, 229 F.3d at 1355–56.

Further, there is no reason why Rule 23(f) compels a conclusion that we must depart from our sister circuits. Interlocutory appeal from a denial of class certification existed prior to the enactment of Rule 23(f), even if it was rare. *See, e.g.*, *Armstrong*, 138 F.3d at 1387. While Rule 23(f) removes some procedural burden to interlocutory appeal of class certification decisions, the circuit court has "unfettered discretion whether to permit [an] appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari." Fed. R. Civ. P. 23 advisory committee's

notes to the 1998 amendment. Giovanniello has not demonstrated that circuit courts freely grant petitions for interlocutory review of class status decisions nor that where such petitions are granted, interlocutory appeal is more likely to be successful because of Rule 23(f). Thus, we continue to conclude with the court in *Armstrong* that even after Rule 23(f), "reliance on the possibility of a reversal of the [district] court's [class status] decision is ordinarily not reasonable." 138 F.3d at 1381.

In addition, Giovanniello's argument as to Rule 23(f) ignores what has stayed the same. Nothing in Rule 23(f) impacts the availability of a motion for reconsideration. Likewise, some named plaintiffs are content to wait until a final judgment before pursuing appeal of a class status determination. Thus, in some instances, the final word on class status may remain unresolved for many years while proceedings play out. *See Stone Container*, 229 F.3d at 1355. In those cases, then, *Armstrong*'s rationale that some appeals will remain in "limbo" for years, remains unaffected. 138 F.3d at 1388. Accordingly, the advent of Rule 23(f) does not compel us to depart from the rule adopted by every other circuit court to have addressed this issue.

Finally, we emphasize the need for a bright-line rule in this area of law. *American Pipe* tolling is an exception to the operation of an applicable statute of limitations. *See Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, --- F.3d ---, 2013 WL 3214588, at *5–*6 (2d Cir. June 27, 2013) (identifying that *American Pipe* tolling is either a legal or equitable exception to the applicable statute of limitations). Some members of the Supreme Court have expressed concern that *American Pipe* tolling might be abused. *See Crown, Cork*, 462 U.S. at 354 (Powell, J., concurring) (reiterating that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse"). We have likewise explained that "*American Pipe* and *Crown, Cork* represent a careful balancing of the interests of plaintiffs, defendants, and the court system." *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987). Given the uncertainty that exists in extending tolling beyond denial of class status, even under Rule 23(f)'s new regime, we conclude that a narrow, clearly defined rule best serves *American Pipe* tolling.

This bright-line cut off of *American Pipe* tolling is not inconsistent with the Rules Enabling Act, 28 U.S.C. § 2072(b), which provides that federal procedural rules "shall not abridge, enlarge or modify any substantive right." Giovanniello argues that cutting off class-action tolling upon a district court's denial of class status deprives plaintiffs of their substantive, not merely procedural, rights to pursue TCPA claims. The Court in *American Pipe* rejected the argument in that case that the Rules Enabling Act prohibited the Court's tolling rule. 414 U.S. at 558–59 (explaining that "[i]n recognizing judicial power to toll statutes of limitation in federal courts we are not breaking new ground" and identifying that the Rules Enabling Act "does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose"). Our decision simply clarifies the scope of *American Pipe* tolling and thus, does not run afoul of the Rules Enabling Act.

V.

In sum, we conclude that once Giovanniello's putative class action was denied class status (in this case upon dismissal of his claim in the Southern District of New York) the tolling of section 1658(a)'s four-year limitations period ceased. Neither the pendency of Giovanniello's motion for reconsideration nor the appellate period further tolled the statute. Accordingly, as Giovanniello concedes, his September 8, 2009 claim was filed thirty days too late. We therefore affirm the district court's decision.

**AFFIRMED.**